NOBLE ET AL. vs. COLEMAN & GUNTER.

1. In an action of trespass to try titles, instituted against a mortgagor in possession, the mortgagee, if entitled to the right of entry, may be ad- mitted as a party defendant.

2. The possession of real estate by a vendor, after an absolute sale, is not of itself presumptive evidence of fraud, but is a circumstance merely from which fraud may be inferred, and as such is properly submitted to the jury.

Error to the Circuit Court of Montgomery. Tried before the Hon. George Goldthwaite.

THIS was an action of trespass, to try titles to two lots of ground in the city of Montgomery, and was instituted by the plaintiffs in error against Robert C. Coleman, one of the defendants. At the trial, Charles G. Gunter moved the court to admit him as a party defendant, on the ground, that he claimed to be the true owner of the lots in controversy, and that said Coleman was his tenant at will, and held under him. The plaintiffs objected, but the court, notwithstanding, granted the motion, and Gunter was made a defendant. The plaintiffs in support of their title introduced in evidence six justices' executions in their favor against Coleman, with the judgments on which they issued, and proved a levy of them on the lots in question, an order of sale by the Circuit Court of Montgomery county at its fall term 1847, a sale by the sheriff under said order, and a purchase by them at such sale, on the first Monday in February 1848. They further proved, that said Coleman was in possession of the lots at the date of the

rendition of their judgments in the justices' court, and had continued in possession ever since : that Coleman had been notified to quit before suit brought, which was the 14th Feb. 1848, and that the debts, on which their judgments were founded, originated in 1845. The value of the rents was also shown by them. The defendants then read in evidence a deed of trust from said Coleman to Gunter, dated 17th April 1847, to secure an indebtedness of the grantor to the grantee to the amount of $1845.00, which deed embraced the lots in controversy and four slaves. They also proved the *bona fides* of the debt provided for by the deed, the sale of the trust property according to its provisions, and the purchase of it at such sale by Gunter, on the first Monday in March 1848. The plaintiffs in rebuttal proved, that said Coleman retained possession of the slaves, as well as the lots, both before and since Gunter's purchase that he hired one of them to the city Council of Montgomery, and received the hire before and since Gunter's purchase; that for five or six years he had been Marshal of the city of Montgomery, with a salary of from six hundred to a thousand dollars, and that Gunter, since 1843, has been laboring under considerable pecuniary embarrassment.

The court charged the jury, that the retention of possession of the personal property by Coleman, after the sale, was *prima facie* fraudulent as to it, but that a different rule prevailed in respect to the real estate : that Coleman's possession of the real estate, after the sale and purchase by Gunter, was not of itself presumptive evidence of fraud, but was simply a circumstance tending to show fraud, the weight of which was to be determined by the jury.

The plaintiffs excepted to the ruling and charge of the court, and now assign them as error.

Noble, for plaintiffs in error :

1. It will be seen by the record in this case, that the plaintiffs purchased the mortgaged premises under execution, at sheriff's sale, on the first Monday in February 1848, and that the mortgage was not foreclosed by sale until the first Monday in March following. Now we contend that the plaintiffs are entitled at all events to this one month's rent, upon the ground, that Coleman, the mortgagor, was not responsible to

Gunter, the mortgagee, for rents and profits, until the latter had foreclosed his mortgage, and that therefore the court erred in permitting Gunter to defend as the landlord of Coleman for said month. The proposition, that the mortgagee is not entitled to rent until final foreclosure and entry, is too clear to admit of doubt. See Field v. Swan, 10 Metc. R. 112; ib 126; 1 Pickering Rep. 87; 4 Conn. Rep. 235; 4 Kent, 154 to 156; 3 Ala. Rep. 357.

2. Fraud, when the facts are ascertained, is a question of law for the determination of the court. 9 P. Rep. 39; 1 S. 72; Sturtevant & Keep v. Ballard, 9 Johnson's Rep. 337. In Doane v. Eddy, 16 Wend. 523, the court would not submit the question of fraudulent intent to the jury. Upon the facts set forth in this record, the court are asked to pronounce this sale fraudulent. Here are all the badges of fraud in Twyne's case or that can be enumerated. Here the relation of debtor and creditor existed—the debtor after absolute sale retains possession as before—he hires out the negroes and receives the hire—he receives the rents and profits of the lots and dwellings—in failing circumstances at the time the mortgage was given, and after the sale utterly insolvent. The mortgage and sale was a general one, conveying every thing visible he owned, even to the badge of fraud in the mortgage, where conscious guilt seeks to hide itself under the special recital: "*Whereas I am justly* indebted," &c. Look on the other hand at the utter improbability, not to say moral impossibility of the *bona fides* of this sale—Gunter, through the whole period of these transactions *pressed* for money, borne down by his debts, the sheriff following him for five years, and 32,000 dollars of executions hanging over him. What is the situation of Coleman, all this while? utterly insolvent it is true, but like many of the *honest* insolvents, who adorn the society in which they move, he has been in the use, possession, and control of houses, lots and negroes, and in the possession of a lucrative office, of near one thousand dollars per annum.

3. It may be said however, that this was a public sale, and that the world had notice and that therefore possession by the mortgagor was not fraudulent. But it matters not, either as to a judicial sale or a public sale with notice, where the relation of debtor and creditor exists, possession, subsequent to the

sale and not in accordance with the deed, is *prima facie* evidence of fraud. See the opinion of Judge Kent, in Sturtevant and Keep v. Ballard, 9 Johnson, 337, and the authorities there cited. The grantee or mortgagee of a fraudulent deed is responsible for rents, after the insolvency of the grantor or mortgagor. Therefore, if this sale be fraudulent, Gunter is answerable to plaintiffs for rent up to the present time. Sands and others v. Codwise, 4 Johnson, 536. The decision upon this point is asked from the fact, that it may facilitate the collection of the rent in this case.

4. As to the constructive fraud, it is the well settled law every where, that the retention of personal property by mortgagor or vendor, after absolute sale, is fraud in law, either *per se* or *prima facie*. Alabama has adopted the latter rule, but requires full and satisfactory evidence to be given in explanation of such possession from facts and circumstances *existing at the time*, otherwise, it is conclusive of fraud. Maulden & Terrell v. Mitchell, 14 Ala. Rep. 814; 2 S. 336; 5 Ala. Rep. 531. But it is said that this rule does not apply to real estate; 3 S. 95, was a case of real property. The court by way of *obitur dictum* intimate that the same presumptions do not arise from the possession of real as personal estate, but the court examined the case with as much scrutiny as if it had concerned personality alone. In 6 Ala. Rep. 179, is the case of a mortgage of real and personal property, as in this case, and the court pronounced it fraudulent, but said not a word as to any distinction between realty and personalty. At all events if there be a difference between realty and personalty, that can only apply where they are seperate and distinct transactions, and not as in this case, both contained in the same mortgage and sale: For as between the same parties to the same deed, the maxim applies, fraud in part, fraud in all. And to decide differently would seem to make a distinction without a difference, for the law expressly says, that it does not hold these sales to be fraudulent from any arbitrary or technical rules, but *because possession* unexplained affords *incontestible* evidence of fraud. But there is no difference. In a recent case in Georgia, this question has been directly decided, and the court unanimously held, that there was no difference. See 2 Kel. Geo. Rep., first case and the authorities there cited.

T. & J. WILLIAMS, J. A. ELMORE & W. L. YANCEY, for defendants :

1. The circuit court has the power to admit a landlord, in to defend, where his tenant at will is sought to be ejected. Clay's Dig. 321, § 49; Doe, *ex dem.* Davis vs. McKinney, 5 Ala. Rep. 719; Thompson v. Ives, 11 Ala. Rep. 239; Falkner v. Jones & Leith, 12 Ala. Rep. 165; Elmore & Willis v. Harris, 13 Ala. Rep. 360.

2. The possession by a vendor after an absolute sale of personal property, unexplained, is based upon the legal presumption, that possession of personalty draws to it the title, and is calculated to give to the possessor a fictitious credit. Hobbs v. Bibb, 2 Stewart, 54; Bank of Ala. v. McDade, 4 Porter, 267; Simerson v. Branch Bank at Decatur, 12 Ala. Rep. 213.

3. The principle upon which those decisions rest, cannot be made to apply to the possession of realty—the possession of which does not draw to it the title, and which therefore affords no ground for credit.

4. The possession of the property in this case by the mortgagor, after foreclosure, does not come within the principle that makes possession of personalty after an absolute sale fraudulent, because a mortgage sale, after public notice, is a public sale, and gives notoriety to the transaction. Simerson v. Branch Bank at Decatur, 12 Ala. Rep. 213; Bank of Ala. v. McDade, 4 Porter, 267; Starkie' Ev. 615.

5. It is not pretended that Coleman was not a *bona fide* debtor to Gunter—the *bona fides* was established, therefore the fact that the mortgagee became the purchaser at the sale cannot prejudice the case. Simerson v. Branch Bank at Decatur, 12 Ala. Rep. 213.

COLLIER, C. J.—The third section of the act "for the relief of tenants in possession against dormant titles" provides, "that in any suit for the recovery of lands and tenements, which shall be commenced against any tenant for years, at will, or sufferance, it shall be lawful for his or her landlord to enter him or herself a defendant to such suit, and such landlord shall be solely entitled to all the benefits and provisions of this act:" Clay's Digest, 321. In Doe, *ex dem.* Davis v. McKinney and another, 5 Ala. Rep. 719, we said, "the terms

11

of this enactment are certainly broad enough, if literally inter-preted, to extend to all cases, and it would really seem that no inconvenience would result from allowing it thus to ope-rate. By making himself a defendant, the landlord cannot urge as a defence any matter, which the law did not previous-ly recognize as available, to defeat a recovery by the plaintiff. The provision of the act cited does not affect the parties rights, it relates only to the remedy. As then it was not allowable for the defendant in an execution to defeat the purchaser by showing he held under another, so, neither can the landlord when let in to defend, set up a title consistent with the pos-session sought to be recovered. It is immaterial to him whe-ther the plaintiff recovers the possession or not, for as soon as he comes in, he will be liable to all the burthens and incur all the responsibilities which rested upon the defendant as a ten-ant. In fact, the recovery of the purchaser, so far as the land-lord is concerned, effects nothing more than the substitution of one tenant for another." It was also added, that if it was an er-ror to permit the landlord to defend, it was one that could work harm to no one, and consequently was not fatal to the judgment. This argument was reiterated in Thompson v. Ives, 11 Ala. Rep. 237, where we said, by way of admonition, that a land-lord should be cautious in making himself a defendant in con-junction with, or instead of his tenant, where the latter holds under a lease for an unexpired term, lest upon a general ver-dict against him, he might be estopped from asserting his title at the expiration of the lease. In Falkner v. Jones and ano-ther, 12 Ala. Rep. 165, it was held, under the statute cited, that it was not necessary the technical relation of landlord and tenant should exist, but the act extends to all persons claiming title, consistently with the possession of the occupier. See also Elmore & Willis v. Harris, 13 Ala. Rep. 360.

In all the cases cited, the plaintiff claimed as a purchaser at a sale under execution, seeking to recover the possession of the defendant in execution, and thus far they are precisely analo-gous with that now before us. The fact that the plaintiffs in the present case purchased the premises in question one month before the defendant, Gunter, purchased at the sale under his mortgage, and that therefore they were entitled to rent for the intervening time, even conceding such to be the law, we think

altogether immaterial, and cannot exempt the case from the influence of the statute. The primary object of the suit is the recovery of the possession, the damages are but secondary and consequential, and if the plaintiff in such action fails to make out a title, which entitles him to the land, he cannot have a verdict for damages, whatever his rights may be in respect to the rent. This is a proposition which is sufficiently illustrated by its statement. But it may be asked, although a mortgagor, remaining in possession by the permission of the mortgee, is not bound to account for rents and profits, unless they are specially pledged, does it follow if he leases or relinquishes to another, that the person thus substituted, can hold the premises free of rent? See Chamber's et al. v. Mauldin, et al. 4 Ala. Rep. 477. The case does not require an answer to this question, and we merely propose it, to exclude a conclusion. It results from what has been said that the Circuit Court did not err in permitting Gunter to become a defendant.

2. It cannot admit of serious question, that the charge in respect to the retention of the possession of the personal estate by Coleman was expressed in terms quite as strong and favorable for the plaintiffs as the law, under the facts disclosed, justifies. Hobbs v. Bibb, 2 Stew. Rep. 54; Ayres v. Moore, Id. 336; Mauldin & Terrell v. Mitchell, 14 Ala. Rep. 814. We do not understand this to be controverted; but it is insisted that the rule is not less rigid when applied to land, and to sustain this argument we have been referred to Peck v. Land, 2 Kelley's Rep. 1. In that case, the judge of the primary court charged the jury, that "possession of land remaining with the vendor, after absolute deed, is not under the statute of 13 Elizabeth, c. 5, an evidence of fraud." In reviewing this charge, the Supreme Court said: "It is true that the ownership to lands is usually evidenced by deed and other written muniments of title. Still in real, as in personal property, we hold, that if the vendee take an absolute conveyance, and nevertheless leave the property in the possession of the vendor, it is *prima facie* evidence of fraud. If a man convey his land absolutely, and yet is allowed to continue in possession as its absolute unqualified owner, this will be a proof that the conveyance is fraudulent." We cannot stop critically to examine this proposition, but we would remark, that we have looked

into the citations of the court from *Atkins* and *Johnson*, and with all deference, we cannot think that they maintain, that the retention of the possession of real estate, *as an isolated fact,* is presumptive evidence of fraud, which would constrain a jury to find against the conveyance. If the vendor was permitted to exercise such a dominion over the land, as indicated that he was the "absolute and unqualified owner," then, perhaps, in the absence of countervailing evidence, fraud would be a legitimate deduction. In Smith v. Lowell, 6 N. Hamp. Rep. 67, a debtor in embarrassed circumstances made an absolute conveyance and continued in possession fourteen years afterwards: *Held,* that the possession of the vendor for so long a time unexplained was *prima facie* evidence, that the conveyance was made to defraud creditors ; that it was not enough to show, that it was intended to secure "some debt," or that it was made in payment of a debt, "it should have been shown that the debt amounted to the fair value of the land." In Every v. Edgerton, 7 Wend. Rep. 259, it was decided, that the "simple circumstance that the grantor remained in possession," after he had parted with his title by giving a deed, did not make the deed void ; "in relation to real estate, that is not even a badge of fraud."

The cases, in which so much potency is accorded to the fact of possession remaining with the vendor, relate to personal property. True, the possession of land by the vendor, for an unreasonable time, or under circumstances indicative of *mala fides,* or inconsistent with the idea of a sale, would furnish a strong reason for pronouncing against the validity of the sale. But the mere failure to relinquish the immediate possession to the vendee, cannot *per se,* in the absence of an explanation accounting for the delay of the vendor to yield it to the vendee, be regarded as such strong evidence as will necessarily make the transfer fraudulent. Paulling v. Sturgis, et al. 3 Stewart Rep. 95.

Roberts in his treatise on fraudulent conveyances (p. 548, *et seq.*) in commenting upon the fact of possession by the vendor as inconsistent with an absolute conveyance, says: "the natural consequences of this contradictory possession involve a two-fold injury. The beneficial interest in the goods so circumstanced belongs either to the assignor or assignee ; if

they belong to the assignor, he might be enabled by his mock transfer, if it could prevail, to continue to himself the enjoyment of *that*, which in conscience belongs to his creditors; if they really belong to the donee or assignee, the possessor might be enabled to attract to himself an illusory credit, against which ordinary prudence is an insufficient guard. But the degree of inconvenience produced by this separation of the property from the possession depends greatly upon the nature of the thing, the property in which is transferred. The property in some things is not wholly ascertained by the possession, and the nature and condition of other things may preclude the possibility of a specific transfer at the moment of the sale. Thus where *land* is conveyed, the want of possession casts a less degree of suspicion upon the transaction, than where *goods* are the subject of the conveyance, for with respect to land, the property is evidenced by possession of the title deeds, and manual occupation is no criterion of ownership. But in looking for the real owner of *moveable chattels*, we regard the possession as indicating the proprietor, since they are not only capable of specific delivery, but are ordinarily *used* and enjoyed by being *possessed*. Land is enjoyed and possessed by the title, and fraud in the transfer of it is mainly to be inferred from the inconsistency of the title with the possession of the title deeds." *Again*, (p. 554, *et seq.*) it is said, the leading object of the statute of 13 Elizabeth, ch. 5, was to prevent those collusive transfers of the legal ownership, which place the property of a man indebted out of the reach of his *bona fide* creditors, and leave him to the beneficial enjoyment of *that* which ought in conscience to be open to their legal remedies. Possession therefore of land, after an absolute conveyance, is evidence of a fraudulent design within the statute; and if this possession be accompanied with acts of ownership, the evidence of fraud becomes very hard to be resisted. But such possession is only evidence of fraud, by being a strong indication of a secret trust and reservation. In Hildreth v. Sands, 2 Johns. Ch. Rep. 35, it was said, possession of land, and taking the profits after an absolute conveyance, is an evidence of fraud, within the statute of frauds, unless such possession be consistent with the terms and object of the deed, or the character of it be openly and explicitly understood. See also

Noble et al. v. Coleman & Gunter.

Codwise, et al. v. Sands, 4 Johns. Rep. 586; 2 Ves. jr. Rep. 292; Fitler v. Maitland, 5 Serg. & W. Rep. 307.

If the conveyance was recorded, there would be no ground for holding that the sale was *prima facie* fraudulent, merely because the possession of the vendor was not promptly yielded, but then it would be incumbent on the creditor who assailed it to rest the imputation of fraud upon some other hypothesis. So, although there may be no registration of the deed, yet if it was executed *bona fide* and for a valuable consideration, the want of a change of the possession would be a circumstance more or less indicative of fraud, according to others which accompanied or surrounded it; but the court could not assume that it was evidence so strong (unless explained) as should control the verdict of a jury. This was the view which was taken by the Circuit Judge.

It may, however, be remarked, that the possession of Coleman was perfectly consistent with the mortgage, at least up to the maturity of the mortgage debt, and the mortgagee instead of then attempting to oust him, might, as he did, have advertised and sold the premises. Fraud then cannot be predicated of the mortgagor's possession previous to the sale, and the only inquiry upon this point which could have arisen, is whether the continuance of the mortgagor's possession after Gunter's purchase affords evidence that the mortgage debt was simulated, or had been paid otherwise than by a devotion of the property to its satisfaction. It must be observed that Gunter does not claim under an absolute conveyance from Coleman, whether we regard the mortgage or consequent sale, so that it is difficult to perceive how the rule invoked by the counsel for the plaintiffs, even if applicable to real estate, can be applied, the more especially, as the action was instituted before the sale by the mortgagee. The questions considered are all that arise upon the record. If the plaintiffs had desired to present others, they should have prayed further instructions appropriate to the evidence—such as the effect of Coleman's possession of the slaves upon the *bona fides* of the transaction in respect to the premises in controversy, and upon the other points that have been discussed at the bar.

We have but to add, that the judgment of the Circuit Court is affirmed.