## NOBLE *et al. v.* NOBLE.

EQUITY—*Fraudulent contracts binding on parties thereto.*—All executed contracts tainted with fraud, are binding upon the immediate parties.

CONTRACTS—*When void as to general creditors.*—A secret, voluntary conveyance made by an embarrassed creditor to another creditor in *preference*, is fraudulent and void as to general creditors, to that extent, but is binding on the parties thereto, and a court of equity will not relieve either party to such conveyance.

*Appeal from Ashley Circuit Court.*

HON. H. B. MORSE, Circuit Judge.

*Watkins & Rose*, for appellants.

The court erred in refusing to allow parol evidence to show that the absolute deed, was, in fact a trust and mortgage.

*Hoffman's Chy. R. 31*, and cases cited on *note*, *p. 34; 5 Page Chy. 10*, and cases there cited in note *1*.

*W. D. Moore and English, Gantt & English*, for appellee.

The appellee being the widow of the intestate, Littleberry R., was legally entitled to dower of one-third, for life, of the lands in question. *Gould's Dig. ch. 60, sec. 1, p. 451; New Digest, ch. 11, sec. 1. (if it is the law of the State upon this subject.)*

Although the court below may have erred in excluding the parol testimony, to show that the deed from Robert W. to Littleberry R. was a mortgage, and not an absolute conveyance, still the decree ought to be affirmed, notwithstanding this error of the court below, upon this question of law. *Davis v. Gibson, 2 Ark. 115; Payne v. Bruton, 10 Ib. 54; Sweepzer v. Gaines, 19 Ib. 96; Walker v. Walker, 7 Ib. 543; Moore v. Maxwell, 18 Ib. 469.*

The dower right of the appellee was not affected by the sale of the lands under judgment and execution in favor of Dade's representatives. It was sold as the property of Robert W. Noble, under a judgment against *him*, not against *her husband, Littleberry R.;* but if it had been a judgment against her husband, her dower right was not defeated by the sale, because the execution issued, and the sale occurred after the death of her husband. *James v. Marcus, 18 Ark. 421.*

BENNETT, J.

Martha R. Noble filed her petition in the Ashley circuit court in chancery, to the March term thereof, 1870, praying dower in certain lands, of which, as she alleged, her husband, Littleberry R. Noble, died seized. The appellants being in possession of the land, answered, admitting that Littleberry R. Noble, at the time of his death, held the legal title to the lands by a deed absolute on its face, but the fact was that these lands were formerly owned by one of the appellants, Robert

W. Noble, and were conveyed to said Littleberry, to secure the payment of certain debts owing by said Robert W. Noble to various parties, besides a debt which he *believed*, at the time, he owed to said Littleberry R. Noble, who was his son, amount-- ing to about fifteen hundred dollars.

Robert W. Noble was also surety for one S. B. Wiggins, on a large debt due to one H. C. Dade, which debt was in course of litigation in the Ashley circuit court, and amounted to several thousand dollars. And the said R. W. Noble being apprehensive that recovery would be obtained against him as surety, and his property sold to pay it, and not having property sufficient to pay the debt and his own debts, and desiring to pay his own debts in preference to security debts, made an arrangement with the said Littleberry R. Noble, by which he, the said Littleberry R. Noble, agreed to pay his debts, upon condition that he would convey to him his lands, by such a deed as would give him power to dispose of the same in any way he might desire to do, for the purpose of raising money to meet his debts; and in consideration of said agreement, the appellant, R. W. Noble, conveyed to said L. R. Noble said lands, by his deed absolute on its face. It is further alleged in the answer, that said Littleberry R. Noble, in his lifetime, did not pretend to have any other or different right to or interest in said lands, than as a trust to pay the debts of his father, said Robert W. Noble, with the proceeds of the same. That a portion of these lands had been conveyed by said Littleberry, in payment of a part of his father's debts, and had come to the ownership and possession of appellees, under such convey- ance, and that appellee, in the lifetime of her husband, and since his death, had notice of all these matters.

On the hearing, appellants offered to prove by parol testi- mony, that the deed of Littleberry was intended to operate only as a mortgage, and was received by him as a trust, etc.

This was objected to by appellee, and the court sustained the objection and excluded the testimony, and held the deed

good, and awarded dower. From which decree appellants prayed an appeal.

The appellee does not deny that parol testimony is admissible to prove that a deed absolute on its face, was intended only as a mortgage, or as a security for a loan or debt, but they claim that the facts, as stated by the appellants in their answer, being true, the deed was a fraud upon the creditors of Robert W. Noble, therefore it was valid, as between the parties, their heirs, executors, administrators, etc.

The only question raised by the record, then, is: Was the deed in question a voluntary conveyance, made in fraud of the rights of creditors? If so, it can make but little difference, between the parties, whether it was intended as a mortgage, trust, or an absolute deed, because the parties to the original fraud cannot now be heard, asking to take advantage of their own wrong, and no court will take jurisdiction for the purpose of relieving them. It is their own folly to have made such a conveyance. A conveyance of this sort, it has been said with great truth and force, is void only as against creditors, and then only to the extent in which it may be necessary to deal with conveyed estate for their satisfaction. To this extent, and this alone, it is treated as if it had not been made. To every other purpose it is good. Satisfy the creditors, and the conveyance stands. *1 Story Eq. Jurisprudence, sec. 371.*

Here the deed was executed, and it was voluntary. What were the motives inducing the execution of the same? Appellant, Robert W. Noble, being the owner of the land in question, was indebted, as he believed, to the intestate, in the sum of fifteen hundred dollars, and to other parties, whose claims were then in the hands of an attorney for collection, to the amount of two thousand dollars. He was, also, security for one Wiggins for a large amount.

Turning to the answer of the appellants, we find these words: "The defendant, Robert W. Noble, was also surety for one S. B. Wiggins, in a large debt due to one H. C. Dade, which debt was in course of litigation in the Ashley circuit

court, and amounted to several thousand dollars; and said R. W. Noble, being apprehensive that a recovery would be obtained against him, as security, and his property sold to pay it, and not having property sufficient to pay *the debt, and his own debts, and desiring to pay his own debts in preference to security debts, made an arrangement with Littleberry R. Noble, whereby he (Littleberry R. Noble) agreed to pay his debts,* upon condition that he would convey to him his lands, by such a deed as would give him power to dispose of the same."

It is clear, then, that the motive inducing this conveyance was for the purpose of attempting to avoid the payment of the security debt to Dade, or, at least, to avoid doing so until all his own personal debts had been paid. Was this fraud silent? Whether a transaction is fair or fraudulent, is often a question of law; it is the judgment of law upon facts and intents. Cases have been repeatedly decided, in which even persons have given a full and fair price for goods and property, and when the possession has been actually changed, yet, being done for the purpose of defeating creditors, the transaction has been held fraudulent. *Bridge v. Eggleston, 14 Mass., 245; Harrison v. Trustees of Phillips Academy, 12 Mass., 456.* Thus, where a person, with knowledge of a decree against the defendant, bought a house and goods belonging to him, and gave a full price for them; the court said that the purchase, being with a manifest view to defeat the creditor, was fraudulent. So, if a man should know of a judgment and execution, and with a view to defeat it, should purchase the debtor's goods, the transaction would be *iniquitous. Worsely v. DeMattos, 1 Burr., 474, 475.*

We are aware that cases of this sort are carefully to be distinguished from others, where sale or assignment, or other conveyance, amounts to giving preference in payment to another creditor, for such a preference or assignment is not treated as *malu fide,* but merely doing what the law admits to be rightful. But secret preference, made to cover up property and

screen it from the eyes of creditors, has always been treated as frauds upon their rights.

In this case it is not pretended that there was a loan by Littleberry R. Noble to Robert W. Noble, or that the deed was intended to secure any debt between them, but it is admitted by the appellants that a part of the consideration of said deed was a debt of about fifteen hundred dollars, due from Robert W. Noble to the intestate, and was in _payment_ of that debt, and not mere security. This certainly was some consideration for the deed, and, as between the parties and their legal representatives, to this extent, must be valid.

We have thus fully gone into the intention of the grantor and grantee, at the time of the execution of the deed, for the purpose of seeing what effect the admission or the rejection of the testimony sought to be introduced would have had upon the final decree of the court.

The fourth section of our Statute of Frauds declares that "every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, * * made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers, prior and subsequent, shall be void."

The general rule, however, has been declared to be that all executed contracts tainted with fraud are binding upon the immediate parties. When the contract is executed it is binding, as the law will not relieve either party, no matter how great may be the hardship to which he shall have subjected himself. _Payne v. Benton, 5 Eng., 53; Butt v. Aylett, 6 Eng., 475; Anderson v. Dunn, 19 Ark., 650._

As shown by the answer of the appellants, this was a voluntary conveyance, made for the purpose of making a preference in the payment of some creditors, and with the intent, at least, to hinder, delay, and may be, defraud others of their lawful rights, there can no doubt.

Admitting the facts as sought to be proven, upon the whole

consideration of the case, although the court below may have erred in excluding parol testimony to show that the deed from Robert W. Noble to Littleberry R. Noble was intended as a mortgage, yet, we think, appellants are estopped from coming into a court of equity, for the purpose of setting aside the voluntary conveyance made, under such circumstances, by them or either one of them.

The decree upon the whole record is correct, and should be affirmed.