## APPERSON & CO. VS. BURGETT ET AL.

1. **PARTIES:** *Practice in equity.*

   Where the court can make a final decree between the parties before it, leaving the rights of others unaffected, it may be done; but where there are outstanding equities in oth rs the future assertion of which  ai ist the parties litigant would cause new equities or revive old ones, as between the parties litigating, this will never be done.

2. **JUDGMENT LIEN.**

   The lien of a judgment is subject to all valid liens on the land at the time it is rendered, whether recorded or not.

3. **LIENS:** *Notice of.*

   Notice of all liens and alienations attaching before judgment may be given at any time before sale of land under execution, and will bind the purchaser.

4. **FRAUDULENT CONVEYANCE:** *Possession by vendor.*

   Whilst possession of real property retained by the vendor will not, as of personalty, raise a *prima facie* presumption of fraud, it may be a fact tending with others to show a secret trust.

5. **SAME:** *Execution at law.*

   The practice of selling under execution at law lands fraudulently conveyed is not to be encouraged

6. **PRACTICE IN EQUITY:** *Vacating fraudulent conveyances.*

   In an equitable proceeding to vacate a fraudulent conveyance of land upon which an execution has been levied, it is not necessary to remit the party to his execution; the court may order a sale for its satisfaction, under its own directions.

APPEAL from *Crittenden* Circuit Court in Chancery.

Hon. L. L. MACK, Circuit Judge.

*Brown* and *Rose*, for appellant.

*Adams, contra.*

EAKIN, J. :

At the June Term, 1873, of the Crittenden County Circuit Court, Apperson & Co. sued the administrators of J. W. Burgett in an action at law to recover a half interest in a body of lands in their possession, which for convenience we will designate as the Home Place.

They answered that they were in possession only as administrators, and denied the title and right of possession of plaintiffs. They also prayed that Pearl Burgett, the infant daughter and sole heir of J. W. Burgett, might be made a party, and with her filed a cross-bill against plaintiffs and John C. Burgett. The object of the cross-bill was to establish an equitable title in said lands by virtue of a purchase by the intestate from said John C., in January, 1867 ; alleging payment of the purchase-money, transfer of possession, and continued occupation in the intestate and his representatives ever since ; and to have the title in the heir declared superior to that of plaintiffs, who claim by virtue of a deed from the Marshal of the United States Circuit Court, upon an execution against John C. Burgett, and a sale thereunder in 1872. The cause was transferred to the equity docket, and afterwards the cross-bill was amended so as to set up an actual deed from John C. to J. W. Burgett at the time of the sale, which had been lost. The plaintiffs responded to the cross-bill, denying that there had been any *bona fide* sale from John C. to J. W., as alleged, but that the same was pretended and colorable only,. and made in fraud of creditors.

At the same term of the Circuit Court at which the action in ejectment had been brought, Apperson & Co. filed a separate bill in equity against John C. Burgett and the representatives and widow and heir of J. W. Burgett, in aid of their remedy against another body of lands bought by them at the

same execution sale; for which John C. Burgett, on the 4th of November, 1867, had executed a deed to J. W. Burgett, which had never been recorded until two or three days before the Marshal's sale, and which they claimed to be in fraud of creditors and without actual consideration. This body of lands we will designate as the "Council Bend" Place. Proper issues were made on these allegations, and the two causes were consolidated and heard together.

In the progress of the causes it was developed by evidence that after the alleged sales to J. W. Burgett from John C., the latter was, in 1868, duly adjudged a bankrupt on his own application. An assignee had been appointed and the property of the bankrupt conveyed to him. Apperson & Co. were the only creditors who proved their debts. Nothing, or very little, came into the hands of the assignee, who was discharged by the court, upon his own application, from all further duties, and the certificate of discharge of the bankrupt was refused. Meanwhile Apperson & Co. had been allowed to withdraw their claim from the bankruptcy proceedings. They afterwards brought suit and obtained judgment in the Circuit Court of the United States for the Eastern District of Arkansas. It was upon this judgment that the execution issued under which they had purchased in both bodies of land. They did not satisfy the debt, and as to the balance the Marshal returned nulla bona. An alias execution was sued and again levied on the second body of lands, the Council Bend Place, and complainants in their bill pray to be allowed to make a sale of the same under the alias, after the deed from John C. to J. W. Burgett may be declared fraudulent and set aside.

At the hearing of the cause complainants applied to the court to suspend proceedings on account of the disclosure of the bankruptcy of John C. Burgett, that they might have another assignee appointed and made a party, offering to

stipulate that it should not cause a delay beyond the next term. This the court disregarded and proceeded to a decree.

With regard to the Home Place, the court found that the sale on the first of January, 1867, of a half interest had been *bona fide* made by John C. to J. W. Burgett for a valuable consideration, which had been paid, and that said J. W. Burgett had taken and held possession of it till his death, and his administrator after him. That Apperson & Co. had notice, and acquired no title by their purchase at execution sale. Title was decreed in Pearl Burgett as heir of Isaac W. Burgett, her father, subject to debts against his estate.

With regard to the Council Bend lands the court found that the payment of the consideration for the same and their actual occupation by Isaac W. Burgett had not been satisfactorily proven, and that the conveyance from John C. Burgett was in fraud of creditors. That deed was .canceled and the title to all the lands constituting that body contained in the Marshal's deed confirmed in Apperson & Co., who were also decreed to pay all the costs of the suit. Both sides appealed.

The question arises *in limine*, ought the Circuit Court, on discovery of the bankruptcy proceedings, to have dismissed both causes for want of proper parties, or to have given complainants time until the next term of the court to have made and brought in an assignee?

It is one of the chief excellencies of equity jurisprudence to do nothing futile or by halves, but to cause all persons interested in the subject-matter of the litigation to be brought in and bound by one decree, adjusting all their rights, and closing all the future litigation with regard thereto. This is not always possible, and to meet the exceptional cases it is provided by the Code that "the court *may* determine any controversy between parties before it when it can be done without prejudice to the rights of others, or by saving their rights." (Sec. 4481

Gantt's Digest.) "But when a determination of the contro-versy *between the parties before the court* cannot be made with-out the presence of other parties, the court *must* order them to be brought in." This is indeed but an affirmance of the former practice, and affords the correct criterion for determin-ing when the court will decline to exercise any jurisdiction whatever, or may, in its discretion, proceed to a partial settle-ment of the matters in controversy amongst the parties actually before it. This will never be done when there are outstanding equities in others the future assertion of which against the parties litigant would cause new equities, or revive old ones as to the same matter between themselves. If so, the decree could, in its nature, be only provisional. But where it can be made final as far as it goes, the court may for convenience proceed, leaving the rights of others unaffected.

The case before us seems to come within the discretional class. The decree as to the title to the lands, subject to the claims of any future assignee, would be final between Apper-son & Co. and Isaac W. Burgett's heirs and representatives ; and would not be disturbed or give any new equities between themselves upon the assertion of these claims. Nevertheless, it would not have been prudent to proceed without making the assignee a party, if there had been any assignee in existence, or any proceedings in bankruptcy kept alive for the adminis-tration of John C. Burgett's effects. But such was not the case. All the effects which came to the assignee had been administered, and he had been finally discharged. The certifi-cate of the bankrupt had been denied. Everything seemed to have been done that was intended under those proceedings. The complainants were the only creditors who had proved their debts, and their withdrawal of their claim, and their pro-ceedings in the Federal and State courts upon the same claim, might well be taken as an election not to revive the proceedings.

in bankruptcy. No one else had an interest to do so. The court did not err in proceeding at once to final decree.

In passing, it may be well to indicate that, in the exercise of this discretion, the court is not confined to the view of the interests of parties disclosed by the pleadings and put in issue. It seems the better practice, and more in accordance with the spirit of equity proceedings, that the court should take notice of any equities brought to its notice, in the course of the proceedings, which it may believe to be *bona fide*, and not interjected for the purpose of confusion and delay. It would be difficult, and this court will not attempt, to lay down any definite rule as to this point. It depends upon sound discretion under the circumstances of each case.

With regard to the home place, the onus was upon Pearl Burgett to show that an actual sale of the place, for valuable consideration, had been made by John C. Burgett to her father at the time alleged. This she did by testimony clear, certain, and unimpeached, proving not only the date but the execution of a deed which had been lost. She proved further that her father had remained from that time in undisputed possession, claiming the whole interest, until his death, and that his administrators had so remained in possession until the action at law for possession was begun. This shifted the burden upon defendant in the cross-bill, to show that the sale was fraudulent. The preponderance of proof is greatly in favor of its fairness, that the consideration was paid, and that Apperson & Co. had such notice of it, not only by the possession of Isaac W. Burgett, but actually at the Marshal's sale, as to put them upon inquiry, and subordinate their judgment lien to the equity (or in view of the last deed), the legal title of Isaac W. Burgett's heirs. There is no error in the decree as to this body of land.

With regard to the other, or Council Bend Place, the com-

plaint admits the execution of the deed from John C. Burgett, to Isaac, on the 4th of November, 1867, which was recorded a few days before the Marshal's sale. This under our decision, in the absence of fraud, gave a legal title superior to the lien of a judgment obtained after the sale, and to the title of a purchaser at execution after the deed had been recorded. The whole onus of showing fraud was on complainants.

The principal evidence bearing upon this point tends to show:

That Isaac Burgett died intestate leaving a large estate and five heirs, to wit: John C., Henry E., Peter N., Isaac W., and Nancy P. Burgett, the last of whom afterwards inter-married with Grider. The estate was but little embarrassed, and administration was taken out only for the partial purpose of closing some business with his merchants. The heirs under-took amongst themselves to divide the bulk of the estate, especially the lands, of which there was a large quantity. In the course of this adjustment, Henry, Isaac W., Peter, and Nancy, on the 18th day of October, 1866, by deed conveyed to John C. their interest in the Council Bend lands, being four-fifths. The deed purports to have been made from their desire to make partition, and for the sum of $19,277, expressed to be paid. It was about the same time that the adjustment of the interests in the Home Place had been made. The Council Bend lands embraced a tract of about three or four thousand acres, composed of fractional sections and parts of sections. It was in a wild state, having only about forty acres cleared. This deed seems never to have been recorded.

On the 4th of November, 1867, John C. Burgett by deed, for the expressed consideration of $5,750 to him paid, conveyed the Council Bend lands (or what was meant to be that tract) to Isaac W. Burgett. But there is a discrepancy here which runs through the whole case, and which seems to have escaped

the notice of counsel and of the court below. The Council: Bend lands lay in a compact body, in two ranges ; some on the eastern side of range 6 east, and some on the western side of range 7 east. They were correctly described in the deed from the other heirs to John C. This is obvious to any one who will attempt to make a plat. But in the deed from John C. to Isaac W., of the 4th of November, the distinction of ranges is not preserved. All are stated to be in range 6 east, whereby some nine hundred acres or thereabouts are conveyed, to which probably John C. had no title, and all the lands in range 7 east are left in himself.

The mistake is patent, but would require the interference of a court of chancery, if necessary, to effectuate the intention. This deed was duly acknowledged at the time, but not recorded. John C. Burgett remained in possession, lived upon the place and cut cordwood for sale. The evidence shows that he did so under an arrangement with Isaac W. by which he was to hold as Isaac's tenant, and pay for the wood cut at a rate per cord, but fails to show satisfactorily that any payments were ever made for rent or on account of wood.

After this transaction John C. Burgett, on November 9th, 1867, executed to Henry Burgett his note for $11,564, due May 15th, 1868. This was assigned by Henry to Apperson & Co., on the 28th of November, 1867. They proved it in the bankrupt proceedings against John C. on the 11th of December, 1869 ; withdrew it on the 8th of March, 1870 ; brought suit in the Federal Court June 16th, 1871 ; recovered judgment April 16th, 1872 ; levied their execution on the lands on the 28th May, 1872 ; sold and purchased under execution August 7th, 1872 ; and, counsel says, obtained the Marshal's deed on the 20th January, 1873. The execution had been levied on the Home Place also. Before the sale the administrators of Isaac W. Burgett, on the 5th of August, 1872, had

caused the deed of the Council Bend Place from John C. to Isaac W. to be recorded ; and at the sale they caused it to be announced publicly to the bidders present that all the lands included in the levy were claimed by the estate of Isaac W. The levy of the Marshal omits the east half of section 1, in range 7 east, which was in the Council Bend tract as conveyed to John C., and intended to be conveyed by him to Isaac. The proper numbers appear, however, in his certificate of purchase, dated of the day of sale.

According to the principles established in this court nearly a quarter of a century ago, and since maintained without question, the lien of the judgment was subject to all valid liens upon the lands at the time of the rendition, whether recorded or not. It bound only what the debtor then had, and was effective only to prevent future alienations or incumbrances. And it was further held, upon mature deliberation and examination of authorities, that notice of all liens or alienations attaching before the judgment might be given at any time before the sale of the lands under execution, and would bind the purchaser. (See *Rogers et al.* v. *Engles*, 16 Ark., 543.) And this notice might be actual, or by recording, or by the possession of the former grantee. (*Ib.*) The conveyance from John C. Burgett to Isaac W., of the 4th November, 1867, gave title superior to that acquired by Apperson & Co., unless the former can be held voidable for fraud.

The circumstances relied upon to establish fraud are the relationship of the parties, the secrecy of the conveyance, the continued possession of the vendor, the eve of bankruptcy, the inadequacy of the consideration, and the confusion and uncertainty of the proof as to payment.

The English rule, adopted under the lead of Twyne's case (2 Coke, 80 a), and followed in America with some modifications—that the possession of property retained in the vendor

Apperson & Co. vs. Burgett et al.

is *prima facie* fraudulent, did not apply to the conveyances of real estate. Possession was not, as in case of personalty, a presumption of absolute ownership—or at least not so strong, and it was supposed that prudent purchasers or incumbrancers would look beyond that to the actual title. Yet possession of real estate would naturally afford some presumption of a possessory right, and in connection with other fraudulent circumstances, has been held proper for consideration. Whilst possession retained by the vendor will not, as in case of personal property, raise the *prima facie* presumption of fraud, it may oe a fact tending, with others, to show a secret trust. This is intimated in a note to Twyne's case, referring to 1 Roll Rep. 996, an authority which we have not at hand. See also on this point, *Paulding* v. *Sturgiss*, 3 Stew. 95 ; *Noble et al.* v. *Coleman & Gunter*, 16 Ala. 77 ; *Ogden Morell* v. *Scherrick*, 54 Ill. 269 ; and so a secret conveyance of land has been held in this State a badge of fraud. *Noble et al.* v. *Noble*, 26 Ark. 317. The fact, too, that John C. Burgett appears to have been greatly embarrassed in his circumstances, and that a few months afterwards he was adjudged a bankrupt, although, of itself, no badge of fraud, may be properly considered in estimating his intentions, in connection with other circumstances.

The consideration of $5,750 as the whole price of a large body of lands, for four-fifths of which he had a year before agreed to pay over $19,000, is, making the utmost allowance for shrinkage, grossly inadequate. If there were other considerations, they were not expressed nor shown with any satisfactory degree of clearness in the proof. The court is aware of the heavy decline of planting lands which followed the abolition of slavery and the prostration of the war, but the effects of this had been already experienced in October, 1866, and it does not account for so great a disparity in value between that

date and the 4th of November, 1867. The Supreme Court, of Missouri, in the case of *Ames* v. *Gilmore et al.*, 59 Mo. 537, which was brought to set aside certain deeds as fraudulent, remarked: "It is a rule in considering such cases that while a slight inadequacy of price alone is very weak evidence,. if the inadequacy is gross, it becomes a badge of fraud which may be considered by a chancellor, and becomes a controlling force when coupled with other circumstances tending to prove fraud."

Considering all the circumstances together, the condition of John C. Burgett at the time, the relationship between the parties, the inadequacy of the price and the unsatisfactory nature of the evidence of its payment, the failure of J. W. Burgett to record the deed or to take visible and notorious possession, the execution by John C. Burgett of his note for over $11,000 within four days afterward, and his petition in bankruptcy within seven months, the meager assets which were given up to the assignee, showing his utter destitution at the time, and thus raising the presumption that the deed to Isaac conveyed all his remaining property, we can not say that the Chancellor erred in decreeing the Council Bend lands subject to the claim of complainants.

The relief granted, however, went beyond the prayer of the bill, and beyond what reason and justice would dictate.. Complainants very properly asked that the deed to Isaac W.. Burgett of the Council Bend lands might be canceled and the lands left free for sale under their *alias* execution. This was. in accordance with the views of this court heretofore expressed, that it is the better practice, in attaching fraudulent. conveyances by creditors, to first get judgment and a levy upon the lands, and then apply to a court of chancery to remove impediments in the way of the sale of a clear title before the sale is made. By this course the interests of the debtor

are better protected, inasmuch as he is enabled to get credit for the full value of his lands upon a clear sale, whilst otherwise, in the face of prospective litigation regarding the fraudulent conveyance, the lands are generally bought by the creditor for a trifle, and the debtor left burdened with almost the whole of his debt.    Whilst a purchaser at execution sale *may* afterwards file a bill to cancel previous fraudulent conveyances, the practice of making such sales is not to be encouraged.    In this case the complainants have seemed to desire a re-sale, and it was obviously proper.    There is no necessity, however, for leaving complainants to pursue their remedy by execution.    The Chancery Court having jurisdiction of the subject-matter, and of all parties in interest, may complete the business, take notice of the judgment, and order a sale under its own directions, for its satisfaction, first sweeping away the cloud raised by the fraudulent conveyance and making all necessary corrections in the description of the lands.

The matter of costs was in the discretion of the Chancellor, which does not appear to have been abused.

Let so much of the decree as applies to the Home place be affirmed, designating the lands which compose it, and also let the decree be affirmed as to the costs of the court below, and let the costs of this court be adjudged against appellants, Apperson & Co.

Reverse so much of the decree as relates to the lands conveyed by John C. Burgett to Isaac W. Burgett, and known as the Council Bend lands, and as to that part let the cause be remanded, with instructions to proceed therein in accordance with the law and practice in equity and not inconsistent with this opinion, to subject said lands to sale for the satisfaction of complainant's judgment at law, and for such rulings as to future costs as to the court may seem meet.