TOLLEY *v.* WILSON.

4-8284                                                    205 S. W. 2d 177

Opinion delivered October 27, 1947.

Rehearing denied November 24, 1947.

*Culbert L. Pearce* and *Owen C. Pearce*, for appellant.

*W. D. Davenport*, for appellee.

Ed. F. McFaddin, Justice. This appeal is the aftermath of *Tolley* v. *Tolley*, 210 Ark. 144, 194 S. W. 2d 687.

In the first case Mrs. Tolley filed, in the White Circuit Court, an action in ejectment against Mr. Tolley for 40 acres of land, and also sought a money judgment against him. Her action was based on a Kansas judgment. The circuit court sustained a demurrer to her complaint, and she appealed. In deciding that case, we said in our opinion of May 27, 1946: ''It follows, therefore, that the judgment here appealed from is affirmed as to so much thereof as sustained the appellee's demurrer to the ejectment action; but is reversed and remanded with directions to overrule the demurrer to so much of the complaint as sought a money judgment based on the Kansas decree for the $195 and also for the unpaid and unsatisfied award for weekly support adjudged by the Kansas decree and past due at the time of the filing of this action in the White Circuit Court.''

Thereafter, on June 20, 1946, our mandate was filed in the circuit court; and on July 15, 1946, judgment was

rendered in the circuit court for Mrs. Tolley against Mr. Tolley for $486.60 as the money judgment. Mrs. Tolley obtained execution on the circuit court judgment, and levied it on the same 40 acres of land that she had described in her ejectment action. So much for the first case.

Thereupon the present case was instituted by James E. Wilson and Elizabeth Wilson, his wife, as an injunction suit in the White Chancery Court, against Mrs. Tolley. The Wilsons alleged that on June 10, 1946, they had paid James A. Tolley $700 in cash for the said 40 acres,[1] and had received his warranty deed which they placed of record on July 15, 1946. The Wilsons claimed that they were *bona fide* purchasers, and prayed that Mrs. Tolley be enjoined from proceeding with her execution against the said land. Mrs. Tolley, in opposing the injunction, alleged, *inter alia,* that the Wilsons had both actual and constructive notice of her action against Tolley; that they were not *bona fide* purchasers for value; and that their claim was subordinate to her rights.

Trial in the chancery court resulted in a decree in favor of the Wilsons, which also quieted their title to the 40 acres. Mrs. Tolley has appealed, presenting the issues herein discussed.

I. *The Lis Pendens.* When Mrs. Tolley filed her ejectment action (the first case) in 1944, she filed a *lis pendens* notice under the provisions of § 8959, Pope's Digest; but her ejectment action failed—as set forth in our former opinion—so the *lis pendens* notice became nugatory. Our *lis pendens* statute is not applicable to an action seeking only a money judgment, since, by its terms, it applies only to actions affecting "title or any lien on real estate or personal property." Therefore, the filing of the *lis pendens* notice in the action seeking a money judgment did not constitute any lien or notice.

II. *The Kansas Judgment.* In her first case Mrs. Tolley filed an action in White county, *to enforce a Kan-*

---

[1] They paid $700 cash, and executed vendors lien notes for $300, and the notes were paid before the injunction suit was filed.

*sas judgment,* but the mere filing of the action in White county did not give the Kansas judgment the force and effect of a lien. A judgment of another state cannot be executed upon in this state until the foreign judgment is first reduced to a domestic judgment. In Leflar on Conflict of Laws, § 186, this appears: ''The full faith and credit clause of the federal Constitution (Art. IV, § 1) renders compulsory as between the American states the common law rule of *res judicata.* It requires each state to give to the judgments of other states the same conclusive effect between the parties thereto and their privies as is given such judgments in the state in which they were rendered. *This does not mean that execution will be levied in one state on account of a judgment rendered in another.''* (Italics our own.)

In the American Law Institute's Restatement of the Law on the Conflict of the Laws, § 433, in discussing the enforcement of a foreign judgment, the rule in the United States is given: ''A foreign judgment will not be enforced by issuing an execution on it.''

Prof. Joseph H. Beale, in his three-volume treatise on the Conflict of Laws, in § 433.1 (p. 1377), in discussing the enforcement of a foreign judgment, says: ''At common law a foreign judgment will not be enforced by issuing execution on it. A new suit must be brought in the state where execution is sought.''

In *Cole* v. *Cunningham,* 133 U. S. 107, 33 L. Ed. 538, 10 Sup. Ct. 269 (1890), the United States Supreme Court said of judgments rendered in one state and sought to be enforced in another: ''No execution can be issued upon such judgments without a new suit in the tribunals of other states, and they enjoy, not the right of priority or privilege or lien which they have in the state where they are pronounced, but that only which the *lex fori* gives to them by its own laws, in their character of foreign judgments.''

It follows, therefore, that the Kansas judgment constituted no lien in Arkansas until a domestic judgment was rendered thereon.

III. *The Opinion of This Court of May 26, 1946.*
Mrs. Tolley contends that when the Arkansas Supreme
Court reversed and remanded her first case, our opinion
was tantamount to a judgment in her favor for her
money claim. But in this she is in error. The full effect
of our opinion on her money claim was to remand the
case with directions to the trial court to overrule Mr.
Tolley's demurrer. We rendered no judgment for any
definite amount for Mrs. Tolley on her claim for a money
judgment. Mr. Tolley's possible defenses had not been
interposed. Section 8189, Pope's Digest, says: "A judg-
ment is the final determination of the rights of the par-
ties in an action." Tested by this statute, it is clear that
Mrs. Tolley had no domestic money judgment against
Mr. Tolley until July 15, 1946, when the White Circuit
Court rendered such judgment.

IV. *Were the Wilsons Bona Fide Purchasers for
Value?* On this fact question, the evidence preponder-
ates to the effect that the Wilsons actually paid their
money of $700 to Mr. Tolley, and obtained their deed on
June 10, 1946, which was prior to Mrs. Tolley's judg-
ment of July 15, 1946. The fact that the Wilsons knew
that Mr. Tolley was being sued for a money judgment
did not, in itself, make the Wilsons *mala fide* purchasers.
Mrs. Tolley has not alleged that the Wilsons were acting
in a fraudulent conspiracy with Mr. Tolley. In fact, she
has not alleged that Mr. Tolley was insolvent, or that he
had no other property subject to execution. In the briefs,
here, there is innuendo to such effect, but there was nei-
ther allegation made nor proof offered to support it.
The evidence in this record conclusively shows that the
only fact known by the Wilsons in this matter was that
Mrs. Tolley was suing Mr. Tolley for a money judgment.
That fact—standing alone—is not sufficient to reverse
the findings of the chancery court, to the effect that the
Wilsons were *bona fide* purchasers for value, since they
paid a fair price for the land. *South Omaha Natl. Bank
v. Boyd,* 79 Ark. 215, 97 S. W. 288; *Acker v. DeVore,* 123
Ark. 347, 184 S. W. 852.

*V. Priority as Between Wilson's Deed and Mrs. Tolley's Judgment.* Finally, Mrs. Tolley points out that her judgment was obtained on July 15, 1946, and that appellee's deed was not recorded until July 15, 1946; and she claims that her judgment is superior. But in this conclusion she is in error. Our judgment lien statute is § 8255, Pope's Digest, and reads in part: "A judgment . . . shall be a lien upon the real estate *owned by the defendant* . . . . from the date of its rendition." (Italics our own.)

Mr. Tolley sold and conveyed the land to the Wilsons on June 10, 1946, so he did not *own* the land on the day Mrs. Tolley's judgment was rendered. The recording of the Wilsons' deed was not necessary to pass title from Mr. Tolley to the Wilsons. In *Apperson* v. *Burgett,* 33 Ark. 328, we held that a prior, though unrecorded, deed was superior to a subsequent judgment. To the same effect, see *Strauss* v. *White,* 66 Ark. 167, 51 S. W. 64; *Howes* v. *King,* 127 Ark. 511, 192 S. W. 883; and *Snow Bros. Hdw. Co.* v. *Ellis,* 180 Ark. 238, 21 S. W. 2d 162.

The assignments raised by the appellant are without merit, and the decree of the chancery court is in all things affirmed.