FEARS v. FUTRELL.

4-8998                                                    224 S. W. 2d 362

Opinion delivered November 21, 1949.

*E. H. Tharp* and *Lee Ward,* for appellant.

*Phil Herget* and *Kirsch & Cathey,* for appellee.

Ed. F. McFaddin, Justice. The question for decision is whether the chancery court was correct in holding that appellee's rights as a mortgage creditor are superior to appellant's rights as a judgment creditor.

On August 15, 1946, appellant, Fears, obtained judgment against R. E. Coleman in the Chancery Court of Greene county for an amount in excess of $10,000. The lands here involved are in Lawrence county; and a certified copy of the Greene county judgment was not filed in Lawrence county (under § 29-130 Ark. Stats. 1947) until October 1, 1948. Prior to the last-mentioned date the rights of appellee, Futrell, arose, as follows:

1. On November 13, 1947, Futrell loaned Coleman $3,200, and as security received, and immediately recorded, a deed of trust from Coleman and wife, covering certain described real estate in Lawrence county, Arkansas. This deed of trust, which did not purport to be security for any subsequent indebtedness, will be hereinafter referred to as the "1947 instrument."

2. On January 15, 1948, Futrell loaned Coleman and wife an additional $3,000, and received from them a promissory note bearing this notation:

"It is agreed and understood that this note is secured by mortgage, already given one the house and 58 lots in West Walnut Ridge, known as the Billingley Estate."

We will hereinafter refer to this note as the "1948 instrument."

As previously stated, Fears had a certified copy of the Greene county judgment filed in Lawrence county on October 1, 1948. Then on January 20, 1949, Futrell[1]

---

[1] Maurice Cathey was named as trustee in the 1947 instrument, and therefore was joined as a party plaintiff with Futrell. But we will continue to refer to Futrell as the "plaintiff" or the "appellee."

filed the present suit to foreclose both the 1947 instrument and the 1948 instrument, and to have both decreed superior to Fears' judgment. As regards the 1948 instrument, Futrell alleged:

". . . that said note, and the agreement thereon endorsed, constituted an equitable mortgage upon the lands as first hereinabove described, . . ." (being those described in the 1947 instrument).

By answer Fears alleged that, prior to November 13, 1947, Futrell "had actual personal knowledge" of Fears' judgment; and that such knowledge rendered Futrell's rights inferior to Fears' judgment. When the chancery court sustained Futrell's demurrer to the said answer, Fears refused to plead further; and a decree was entered adjudging Futrell's rights to be superior in all respects to Fears' judgment. This appeal challenges that decree.

I. *As to the 1947 Instrument, but Little Need be Said.* Fears' judgment against Coleman in Greene county was not a lien on Coleman's lands in Lawrence county until a certified transcript of the judgment was filed in Lawrence county; and that date was October 1, 1948. So Futrell's mortgage on the Lawrence county lands antedated the filing of Fears' judgment in that county. In his answer Fears did not allege that the dealings between Futrell and Coleman were in bad faith or in pursuance of any scheme to defraud creditors. In the absence of such a claim, the holding in *M. & F. Bank* v. *Harris,* 113 Ark. 100, 167 S. W. 706 is not applicable. Futrell's actual knowledge of the Greene county judgment against Coleman did not prevent Futrell from dealing with Coleman in good faith. Those dealings, as consummated by the 1947 instrument, are superior to the subsequently filed judgment. The chancery court was correct in so holding.

II. *As to the 1948 instrument, Claimed by Futrell to be an Equitable Mortgage, a More Extended Discussion is Necessary.* The notation on the note read:

"It is agreed and understood that this note is secured by mortgage, already given one the house and 58

lots in West Walnut Ridge, known as the Billingley Estate.''

The verified complaint alleged—and Fears' answer did not deny—that the 58 lots were the same property as that described in the 1947 instrument; so the identity and sufficiency of the description of the property, covered by the notation, cease to be questions in this case.

In *Apperson* v. *Burgett*, 33 Ark. 328 Mr. Justice EAKIN, speaking for this court in 1878, said:

"According to the principles established in this court nearly a quarter of a century ago, and since maintained without question, the lien of the judgment was subject to all valid liens upon the lands *at the time of the rendition,* whether recorded or not. It bound only what the debtor then had, and was effective only to prevent future alienations or incumbrances."

Mr. Justice EAKIN said "at the time of rendition," because in that case the lands were in the same county in which the judgment was rendered; and because the statutes of Arkansas then in force (§ 3603-4, Gantt's Digest of 1874) did not provide for a circuit court judgment to be filed in another county. It was not until March 17, 1891, that there was enacted what is now § 29-130, Ark. Stats. (1947), whereby a circuit or chancery court judgment may be filed in another county and accomplish lien results. So Mr. Justice EAKIN's language "at the time of rendition", when applied to the case at bar, really means "at the time of filing in the county in which the lands are located." Read in such light, the language indicates that a prior valid lien, though unrecorded, is superior to a subsequently filed judgment.

In *Snow Bros. Hdw. Co.* v. *Ellis*, 180 Ark. 238, 21 S. W. 2d 162, we again considered the nature of a judgment lien; and Mr. Justice KIRBY said:

"A judgment lien, however, does not attach to the land, but is a lien on the real estate owned by the defendant—the judgment debtor's interest in it—and, if that interest be subject to any infirmity or condition by

reason of which it is eliminated or ceases to exist, the lien attached thereto ceased with it. *Howes* v. *King,* 127 Ark. 511, 192 S. W. 883; § 6299, C. & M. Digest; 15 R. C. L., § 255, p. 798.''

In the above quotation we cited with approval 15 R. C. L. 798, which reads:

''The lien of a judgment is subject to prior liens, and will not prevail over prior equitable claims on the same property. It is subject to every equity which existed against the land in the hands of the judgment debtor at the time of the rendition of the judgment, and courts of equity will protect the equitable rights of third persons against the legal lien, and will limit such lien to the actual interest which the judgment debtor has in the estate.''[2]

The effect of our holdings,[3] as applied to the case at bar, is: if the 1948 instrument is sufficient to constitute an equitable mortgage, then Futrell's claim is superior to the judgment rights of Fears.

What language is necessary to create an equitable mortgage. In *Bell* v. *Pelt,* 51 Ark. 433, 11 S. W. 684, 4 L. R. A. 247, 14 Am. St. Rep. 57, we held that an equitable mortgage was created by language on a promissory note which, after a description of the land, said:

''. . . vendor's lien is hereby reserved on said land for the purchase money.'' Mr. Justice HEMINGWAY, speaking for the court in that case, said:

''Mr. Pomeroy says that, where an instrument manifests an intent to charge or pledge property, real or personal, as security for a debt, and the property is so described that the thing intended to be charged or pledged can be sufficiently identified, it is held that a lien follows. 3 Pom. Eq., § 1237. An attempt to create a security in legal form having failed, equity will give

---

[2] Language to the same general effect may be found in 31 Am. Juris. 39.

[3] For some other cases, see *Carroll* v. *Evans,* 190 Ark. 511, 79 S. W. 2d 425; *Citizens Bank & Trust Co.* v. *Garrott,* 192 Ark. 599, 93 S. W. 2d 319; and *Tolley* v. *Wilson,* 212 Ark. 163, 205 S. W. 2d 177, and cases there cited.

effect to the intention of the parties and enforce the lien as an equitable mortgage. Any agreement that shows an intention to create a lien is in equity a mortgage."

In *Arkansas Cypress Shingle Co.* v. *Meto Valley Railway Co.*, 97 Ark. 534, 134 S. W. 1195, we again held that an equitable mortgage was created by language on a promissory note. Mr. Justice Wood, speaking for this court, quoted with approval this language:

" ' . . . a lien created by contract, and not sufficient as a legal mortgage, will generally be regarded as in the nature of an equitable mortgage. The form of the contract is immaterial. Though a lien may not be expressed in terms, equity will imply a security from the nature of the transaction, and give it effect as such, in furtherance of the agreement of the parties, if there appears an intention to create a security.' "[4]

Applying the rationale of our holdings to the case at bar, it is clear that the notation on the 1948 instrument was sufficient to constitute an equitable mortgage, because the notation said: "It is agreed . . . that this note is secured by mortgage . . . on the house and 58 lots . . ." This was an agreement to create a lien, and as such was a valid equitable mortgage. Therefore: since (a) it is not denied that the description of the property, referred to in the notation, is sufficient; and since (b) prior equitable mortgages are superior to subsequently recorded judgments; and since (c) the notation on the 1948 instrument was sufficient to constitute an equitable mortgage, it follows that the chancery court was correct in sustaining the demurrer to the appellant's answer. Affirmed.

---

[4] See, also, *McGuigan* v. *Rix*, 140 Ark. 418, 215 S. W. 611, and Hughes on Arkansas Mortgages, §§ 13 and 14.