JULY 1830.

3s  95
108  104

PAULLING v. STURGUS, et. al.

1. The answer of a defendant in Chancery, when responsive to the bill, and not disproved, is to be considered at the trial as true.
2. The possession of land continuing in the vendor, after a sale by him, does not create the same presumption of fraud as in the case of chattels.
3. As to what circumstances will be sufficient to render a sale of land fraudulent, *quere*.

THIS was a bill in Chancery, filed in 1817, in Madison Circuit Court, by William R. Paulling against James A. Sturgus, and his two sons, William F. Sturgus and James B. Sturgus, and against William Pope jr. his son-in-law. The object of the bill was to compel Pope to convey to Paulling, the complainant, a quarter section of land in Madison county, and to obtain a decree against James A. Sturgus and his two sons for the profits of the land, deducting therefrom the amount of two installments of the original purchase money, paid to the Government of the United States, after the land was purchased, by one Samuel Donahoo, under whom the complainant claimed title. The defendants each filed their answers separately, and depositions were taken.

The facts alleged in the bill and answers are numerous; those deemed material to the decision are stated in the opinion of the Court as follows:

The prominent facts charged by the bill are, that in 1809 one Kibble purchased of the United States the land in contest; that in 1811 he sold it to Sturgus the elder, who being then embarrassed, sought to defraud his creditors by the aid of his two sons mentioned, who were minors; that the note given to Kibble in whole, or part payment for the land, was signed by said James A. Sturgus as principal, and his said sons as security; that Kibble assigned the certificate for the land to the two sons, who were destitute of the means to purchase; that the note having been prosecuted to judgment, Sturgus the elder paid the whole of the consideration money; that he had taken possession under the purchase, and cultivated the land as his own, from the time of the purchase, and habitually exercised acts of ownership over it; and that he had mortgaged it to Anderson, and procured his sons to assign the certificate to him to secure the repayment.

It is further charged that at a subsequent period, J. A.

len obtained a judgment against the elder Sturgus and his son William F., and by virtue thereof caused execution to be levied on the land, and had it sold as their property. That it was purchased by Donahoo in 1816 at the price of $150, who afterwards, having obtained the Sheriff's deed, sold and conveyed the same to the complainant for a valuable consideration. That at the time Donahoo purchased, Anderson's mortgage was in existence, which he made known to the bidders, and the land was sold subject thereto. That Anderson while he held the certificate, paid the third installment, being about $80, which he claimed in addition to his mortgage money. That after the purchase by Donahoo, Anderson's claim was paid off, the mortgage redeemed, and the certificate transferred to Pope, the son-in-law of the elder Sturgus, which transfer is alledged to have been without consideration, to defraud Donahoo. That Pope, by virtue of the transfer, the residue of the purchase money being paid by him or the Sturgus's, obtained a patent for the land; and that Sturgus the elder, through all these mutations of title, continued to enjoy the possession and profits of the land, and to improve it.

The facts as shewn by the answers of the several defendants, and the proofs made, vary materially from the allegations of the bill. It is true, Sturgus the elder, and his sons, they remaining single, resided together on the land and enjoyed it in common, as well before as after the assignment of the certificate to Pope. This is admitted by the several answers, and otherwise proven. All the Sturgus's, concur in the denial that the land was ever purchased for James A. Sturgus, paid for with his money, or that it was in any way his property. Nor are any of the essential facts of the answers disproven. They aver substantially, that the contract with Kibble was made by Sturgus the elder for his sons; that he and they had joined in the note for the purchase money, according to Kibble's request, and the terms of the contract; but that all the purchase money was paid with the funds of the sons; that the father, on several occasions relating to the land, having more leisure and capacity for it, negotiated contracts for his sons at their request; that he did so in renting the land for his son J. B. after his removal from the place, until he sold to Pope, and after that, he had done the same for him at his like request; that in 1815, William F. Sturgus sold his interest in the land to James B. *bona fide*, for a valuable consideration; that this sale was made a short time prior

to Allen's judgment and the sale under it, and was made public at the Sheriff's sale; that Anderson's mortgage being also known, the land sold for a nominal sum compared with its value.    It is admitted the elder Sturgus applied to Anderson for $500 obtained on the mortgage of the land, but denied that he executed the mortgage; this is averred to have been done by the sons, and that the agency of the father was at their request; that the father was aged and indigent, and the sons were moved by a sense of filial duty to extend to him the benefits he received from the land.

The answers of James B. Sturgus and Pope further state, that the former purchased his brother's interest in the land for and in behalf of Pope; that in 1819, which was subsequent to the Sheriff's sale of the land, the mortgage to Anderson was discharged by means of the jointfunds of James B. Sturgus and Pope; and that the former was at the same time indebted to the latter, he having at different times, between 1812 and 1816, advanced to James B. Sturgus near $1500, as the consideration for his interest in the land, and as the means of redeeming it from the mortgage, and paying the balance due the United States.    To indemnify Pope for the money advanced, and to secure to him his interest in the land, the Sturguses executed the necessary assignments of the certificate for the land to procure the Patent in his name.    Pope also states, he believed the sum advanced by him was the fair value of the land, and supposed the vendors had a legal and equitable right to sell, and that he had no notice of any prior equitable right thereto.

From the testimony of Neal and McDaniel, it is shewn that James B. and William F. Sturgus were young men, apparently without the means of purchasing the land; that the elder Sturgus occupied the land from the time of the purchase from Kibble until his death, except one or two years while he rented it to another, and that his sons occasionally resided with him.    Adair deposes that the elder Sturgus was insolvent before he came to this state, that his son William F he supposes to have been then (1828) about 35 years of age; that Pope is wealthy, and had been generous and kind to the old man in contributing to his support in Kentucky and in this State; and especially in aiding some of his sons; that since the death of the elder Sturgus, the land has been rented out by Pope's agent, for what price, he does not know, but it was worth on an average about two dollars an acre for 1825, 6 and 7.

During the pendency of the cause, two of the defendants, James A. Sturgus and James B. Sturgus, died; their death was suggested, and the cause proceeded to trial against the survivors, at May term 1828, before Judge Gayle, who decreed in favor of the defendants, and dismissed the bill with costs. To reverse this decree, Paulling prosecuted a writ of error to this Court.

The cause was argued by HUTCHISON for the appellant, and by HOPKINS for the appellees.

By JUDGE SAFFOLD. Under the circumstances of the case as above stated, the legal or equitable result in relation to the title is to be considered. So far as any conclusion is warranted from the indigence and consequent inability to purchase, the effect would appear to be the same in reference either to Sturgus the elder or his sons, that neither had the ostensible means of paying for property of that value. There is no admission by either of the defendants, that the father actually paid the purchase money, or any part of it, nor is there other proof of that fact. But it is charged and admitted that the purchase was made on time; how long is not shewn; that this was done in June 1811, at the price of two hundred dollars, besides the remaining instalments due the United States.

It may be remarked that William F. Sturgus, though a joint defendant with his father in the execution under which the land was sold, had transferred his interest to his brother before the judgment was obtained. The transfer of his interest, it is true, so recently preceded the judgment, as to justify a suspicion that it may have been made in anticipation of it, and to elude its effect. But this view of the case is less material, in as much as it is not charged that the title to the land, or any part it was in William F. Sturgus, but in his father, except that the sons were made the nominal assignees of the certificate, to secure the land for the father, against the claims of his creditors. This fact connected with the evidence tending to prove that the transfers were made in good faith, and that Pope is a purchaser for a valuable consideration, satisfies the inquiry respecting the title or interest of William F. Sturgus. It does not appear that either of the Sturgus's, independent of Anderson, or Pope, had funds to make the purchase, or if any, how acquired. It seems that the only means they had of raising money about the time of, and subsequent

to the purchase from Kibble, was personal industry; in this respect, the sons, from their youthful vigour, must be presumed to have had the advantage.

That Pope is a *bona fide* purchaser for a valuable consideration, must be assumed as true. It is so averred in the answers of all the defendants; and by James B. Sturgus and himself the circumstances are particularly stated, and not disproved. From them it appears that as early as the first of the year 1813, Pope advanced to James B. Sturgus as much as $250. In the winter of 1814–15, he advanced a further sum of $500, and as early as September 1816, the additional sum of about $700, which James B. Sturgus declared his intention of using for the redemption of the mortgage held by Anderson, and to pay the balance due on the land to the United States; and that these sums, with a small amount otherwise owing, as stated by James B. Sturgus, constitute the consideration which passed between him and Pope, for the land, and which induced the assignment of the certificate to the latter, and procured the patent in his name.

Thus it appears that at the time of the sheriff's sale, when Donahoo became the purchaser of the land at $150, neither James A. Sturgus nor his son William F., the defendant in the execution, had any title or interest in the land. As to the effect of the possession of the land, so long as it was enjoyed by the defendants in the execution, it is to be remarked, that during most of that time James B Sturgus was also a joint occupant; that James A. Sturgus, who is charged as having been the proprietor, appears never to have been such; nor does Pope claim to have derived title, either mediately or immediately, from him. Therefore, without entering into a strict inquiry whether at the date of Allen's judgment, or of the sale of the land under it, the inchoate title to the land, held only by certificate for part payment to the United States could be transferred by a sale under an execution at law so as to vest even the equitable interest in the purchaser, it is sufficient to say the inchoate title of this land appears not to have been in the defendants in the execution. With respect to the doctrine of constructive fraud arising from the enjoyment of possession by the debtors, it is not conceived that, according to the most rigid rule, it has the same application to real estate. that it has to chattels; the former admits of more certain *indicia* of title in writing, duly proven, and when complete, to be found of record. On the contrary

JULY 1830.

Paulling
v.
Sturgus, et al.

a 2 Stewart
R. 54.
b Idem 336.

the possession of personal property implies ownership, and when retained by the former owner who is a debtor, affords at least *prima facie* evidence of fraud, and, as high authority has often held, even fraud *per se*. By the rule however as settled by this Court, in the case of *Hobbs v. Bibb*, [a] and *Ayres v. Moore*, [b] this presumption is subject to explanation by evidence to the satisfaction of the Court and jury. Hence, on a view of all the circumstances of this case, it appears there was no error in the decree of the Circuit Court dismissing the bill at the costs of the complainant, and in this opinion the Court are unanimous.

Decree affirmed.