# Tompkins *et al.* v. Nichols & Jamison.

*Bill in Equity to set aside Conveyance made with Intent to hinder Creditors.*

1. *Fraud; burden of proof as to.*—Where an allegation, whether negative or affirmative in form, involves a charge of fraud, the burden of proof is on the party making the charge.

2. *Same; when not imputed.*—Fraud will not be imputed, when the facts and circumstances out of which it must arise may consist with pure intention; to create such an imputation the facts must be such that they are not explicable on any other reasonable hypothesis.

3. *Possession of land; to what referred.*—Where the possession of land appears to be in a mother-in-law or a son-in-law who live together upon it, the possession will be referred to the legal title. The appearance of possession by the mother-in-law is not a badge of fraud where she has conveyed to the son-in-law, and her conveyance has been duly recorded.

4. *Relationship of parties; not of itself badge of fraud.*—The relation of mother-in-law and son-in-law, between the vendor and vendee of land, is but a circumstance from which, in connection with other facts and circumstances, fraud may be inferred. The relation is not of itself a badge of fraud, and does not shift the burden of proof.

5. *Fraudulent intention of vendor; when will not invalidate conveyance.*—The intention of the vendor to defraud creditors cannot invalidate her conveyance, unless the vendee participated in the intended fraud.

[Tompkins *v.* Nichols.]

6. *Denial of fraudulent intent; what not overcome by.*—The positive an-
swers and testimony of the vendor and vendee denying all fraud or inten-
tion to defraud creditors, and setting up a *bona fide* conveyance for a valua-
ble consideration, are not overcome by the testimony of two witnesses, who
testify only to facts and circumstances creating mere suspicion.

APPEAL from Chancery Court of Sumter.

Heard before Hon. A. W. DILLARD.

This was a bill in equity filed by Nichols & Jamison and
others, who were judgment creditors of Mrs. Amelia Tomp-
kins, in the aggregate sum of $774.34, to set aside and de-
clare void, four conveyances of her real and personal prop-
erty, made to her son-in-law, John Lawhorn, purporting to
have been made for the aggregate consideration of $4,600.00
paid by him, on the ground that the conveyances were made
with the intent to hinder, delay and defraud creditors.

The bill charges that before and at the time of the execu-
tion of these conveyances, suits were pending against Mrs.
Tompkins; that she continued to reside on the lands as be-
fore the sale; that by the sale she disposed of substantially
all her property liable to the satisfaction of her debts; that
the consideration had not been paid; that Lawhorn was
poor, and not possessed of means sufficient to make the pur-
chase; that the deeds were made by Mrs. Tompkins to avoid
paying her just debts, and to hinder and delay and defraud
creditors, and that Lawhorn received the conveyances with
the intent to aid her in this purpose.

The bill also prayed a discovery of the defendants.

The defendants both answered on oath, positively denying
all fraud, and averring that the transactions between them
were a fair and *bona fide* purchase and sale of the property
at its market value, and denying all intent to hinder, delay
or defraud creditors.

Mrs. Tompkins admitted the pendency of the suits, and
that she conveyed substantially all her property which was
subject to execution; and alleged that one Scarboro, guardian of
her daughter, was largely indebted to his ward, and in part
payment transferred to Lawhorn Mrs. Tompkins' note for
$2,800.00, which she had given Scarboro for a debt due him;
that Lawhorn having asked for payment, she replied that
she had no money, and he would have to take property, and
in this way negotiations for the sale commenced; that she
was old, and a poor manager and preferred selling the bal-
ance of her property; that she reserved no benefit to herself
in the property conveyed, and had never told Lawhorn any-
thing as to her pecuniary condition, or about the pendency
of suits against her; and in answer to one of the interroga-

[Tompkins v. Nichols.]

tories propounded to her, she states that she has in her possession $1,500.00 of the purchase money, the whole of which was paid her, $2,800.00 in the Scarboro note and the balance in money.

Lawhorn states that he was married in October, 1868; that at the time of the purchase he was worth about $5,000.00, and states with particularity the sources from which he derived the money; that he knew nothing of the pendency of any suits against Mrs. Tompkins or her indebtedness; that he paid the full consideration stated in the deeds, which were executed on the day they bear date, and duly recorded some ten days thereafter; that the price paid was a fair market value for the property, and he positively denies any intention to hinder, delay, or defraud creditors on his part or any knowledge of such purpose on the part of Mrs. Tompkins.

It was agreed that these answers should be taken as the depositions of the defendants. The complainants examined R. W. Ennis and G. W. Dainwood, the attesting witnesses to the deeds. The material portion of their testimony was, that they did not read over the deeds, did not see any money paid, and were not informed as to the contents of the deeds, but they did not ask to see the deeds or what was in them. One of the witnesses testified that there was nothing secret about the transaction. The other witness testified, that he asked Mrs. Tompkins at the time of the signing of the deeds if she knew its contents; he further says: "Whilst I can't describe it, there was an appearance of secrecy about these papers. I thought that Mrs. Tompkins and Mr. Lawhorn preferred that I should not read the deed."

The chancellor decreed that the deeds were made with intent to hinder, delay and defraud creditors, and were void as to creditors, and ordered a reference to the register, to ascertain the amounts due complainants. The chancellor's decree further recited that in as much as Mrs. Tompkins "admits in her answer that she has over fifteen hundred dollars in money on hand, and as this decree might be reversed on appeal, it is decreed and ordered that the said Amelia Tompkins on being served with notice of this order, pay over to the register all money owned and possessed by her over and above the sum of one thousand dollars, which is deducted as her personal exemption, and on failure to comply with this order she will be attached for contempt pursuant to acts of 1870, page 34." ·

This decree is now assigned as error.

THOS. B. WETMORE, for appellants.

ROBT. H. SMITH and THOS. COBBS, *contra*.

BRICKELL, C. J.—1. In general the obligation of proving any fact, lies upon the party who substantially asserts the affirmative of the issue. 1 Greenl'f. Ev. § 74.

2. Where the allegation, whether negative or affirmative in form, involves a charge of fraud, or other like violation of the law of God and man, the party making the allegation must prove it; for in every such case the presumption of law, which is always in favor of innocence, is in favor of the party charged. 1 Greenl'f. Ev. § 80.

3. "A court of chancery will not impute fraud, when the facts and circumstances out of which it must arise may consist with pure intentions; but to create such an imputation, the facts must be such that they are not explicable on any other reasonable hypothesis. *Steele* v. *Kinkle & Lehr*, 3 Ala. 358; *Smith* v. *Br. Bank of Mobile*, 21 Ala. 125; *The Ala. Life Ins. and Trust Co.* v. *Petway*, 24 Ala. 566.

4. The retention of possession of a chattel by the vendor after an absolute sale, is, as to his creditors, not a fraud *per se*, but no more than a badge of fraud, and open to explanation. But the retention of the possession of land by the vendor after he has conveyed the same and his conveyance has been duly recorded, does not raise even a presumption that his sale was fraudulent. *Paulling* v. *Sturgis*, 3 Stew. 95; *Noble* v. *Coleman*, 16 Ala. 77; 1 Brick. Dig. pp. 25–26, §§ 154 to 175.

5. The legal title to land in Alabama, in general passes and is evidenced by writing only, and by writing which our registration law requires to be recorded within a period therein designated. *McPherson* v. *Walters*, 16 Ala. 716.

6. If the possession of land appear to be in a mother-in-law or in a son-in-law who live together upon it, the possession will be referred to the legal title; and the appearance of possession by the mother-in-law is not a badge of fraud where she has conveyed the land to the son-in-law and her conveyance has been duly recorded. *Terrell* v. *Green*, 11 Ala. 207.

7. The relation of mother-in-law and son-in-law between the vendor and vendee of land, is not more than a mere circumstance, from which in connection with other facts and circumstances fraud may be inferred. That relation alone is not a badge of fraud and does not shift the burden of proof.

8. The intention of the mother-in-law, the vendor, to defraud her creditors, cannot invalidate her conveyances of land to her son-in-law in the absence of evidence proving

[Collins v. Mountain.]

his participation in her meditated fraud. *Anderson* v. *Hooks*, 9 Ala. 704; *Jones* v. *Norris*, 2 Ala. 526; *Stover* v. *Herrington, et al.*, 7 Ala. 142; *Oden* v. *Rippetoe*, 4 Ala. 68.

9. The defendants in the present case, who are the appellants here, are charged with a fraud upon the creditors of the vendor, in the sale by the one to the other of the lands mentioned in the bill. They absolutely deny all fraud and responsively set up in their answers a *bona fide* sale and conveyance by the one to the other for valuable consideration; and the vendee in his answer denies all notice at the time of his purchase of any indebtedness by or suit against his vendor. These several answers are, by agreement of complainants' solicitors, duly made, to be deemed also as the duly taken depositions of the defendants, and as such constitute part of the evidence in the cause. It is manifest that these denials contained in the answers, and these agreed depositions, are not outweighed by anything contained in the depositions of the only two witnesses examined by the complainants touching the alleged fraud.

Upon these grounds alone, without noticing other grave questions presented by the record, the solution of which cannot possibly benefit the complainants, we are compelled to hold that the chancellor erred in his several decrees, and to reverse the same, and to render here a decree dismissing the bill at the costs of complainants in this court and in the court below.