[The H. B. Chaflin Co. *et al* v. Muscogee Manufacturing Co. *et al.*]

legislature. As has been well said, "Judges, in construing laws, are to inform themselves of the previous state of the law, and the mischief to be remedied, and make such construction as will advance the remedy and suppress the mischief. * * * The intention of the law is to be gathered from the cause of necessity of enacting it."—*Dubose v. Dubose*, 38 Ala. 241. It is, again, a familiar rule, that "a construction which leaves a sentence or clause of a statute no field of operation, should be avoided, if any other reasonable construction of the language can be given."—*Lehman v. Robinson*, 59 Ala. 235. The sole object of the amendment was to suppress usury, and leave no one to be victimized by it, when he seeks to avoid it,—passed in the interest of public policy, and for the prevention of extortion by the favored out of those not so fortunate as they.

# The H. B. Chaflin Co. *et al. v.* Muscogee Manufacturing Co. *et al.*

*Bill in Equity to have Attachments declared Collusive and Fraudulent, and Constituting a General Assignment.*

1. *Appeals; review of decree of chancellor.*—Under the provisions of the statute, (Code, § 3826), where an appeal is taken from a final decree of the chancellor, no weight shall be given to the decision of the chancellor upon the facts, but the Supreme Court is required to weigh the evidence and render such judgment as, in their opinion, is deemed right and best.

2. *Bill to set aside collusive attachments; burden of proof.*—Where an insolvent debtor, after the levy of attachments by certain of his creditors upon his stock of goods, makes a deed of assignment for the benefit of his creditors, upon a bill filed by other creditors of such debtor, which avers that said attachments were collusive, fraudulent and void, that they and the deed of assignment were parts of one and the same trans-

[The H. B. Chaflin Co. *et al* v. Muscogee Manufacturing Co. *et al*.]

action, and which prays that said writs of attachment be treated and declared as part of said general assignment and constituting therewith one conveyance of general assignment for the equal benefit of the creditors of said debtor, and that the preference attempted to be created by the suing out of the collusive and fraudulent attachments be declared nun. and void, the burden rests upon the complainants to show that said attachments were the result of fraudulent collusion between the plaintiffs in attachment and the common debtor; and upon such a bill there can never be any shifting of the burden of proof to the respondent.

3. *Same; rights of attaching creditor; not affected by the fact that the debtor awaited the levy of the attachment.*—In such a case, the fact that the insolvent debtor had reason to believe, or even knew, that the attaching creditors were going to sue out writs of attachment, and delayed the execution of the deed of assignment until said writs of attachment had been levied, does not affect the priority acquired by said creditors, under their attachments, unless they fraudulently colluded with the debtor and had some agreement, understanding or arrangement with him, by which such priority was to be effected.

4. *Same; fact that attaching creditors aided debtor to again start in business does not authorize inference of collusion and fraud.*—In such a case, the fact that subsequent to the levy of the attachment, the attaching creditors participated in a scheme to again start the debtor up in business, and aided him to purchase the attached property with a view of again going into trade with it, does not, of itself, invalidate such attachments, nor does it afford such a sufficient basis for an inference of collusion in suing out the attachments, as will prevail against the direct testimony of the attaching creditors and officers of the defendant in attachment, that there was no collusion between said creditors and debtor in suing out said attachments.

5. *Failure to introduce witnesses; does not justify unfavorable inference.*—Where a bill is filed by creditors of an insolvent corporation, to have attachments previously sued out by other creditors declared null and void and to constitute a part of a deed of general assignment made by said debtor, upon the ground that said attachments were collusive, fraudulent and void, the fact that the respondents failed to introduce and examine the president of the debtor corporation and its attorney, does not justify an unfavorable inference against the attaching creditors, where it appears that such witnesses were equally accessible to the complainant and the defendants in said case.

[The H. B. Chaflin Co. *et al* v. Muscogee Manufacturing Co. *et al.*]

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellees against the appellants. The facts of the case necessary to an understanding of the decision of the present appeal, are sufficiently stated in the opinion.

FRANCIS G. CAFFEY, ALEX. TROY, THOMAS G. & CHARLES P. JONES and ROQUEMORE & HARMON, for appellant.—Complainants must sustain every material allegation and the identical allegations of their bill.—*Reynolds v. Excelsior*, 100 Ala. 296; *Simms v. Greer*, 83 Ala. 263; *Floyd v. Ritter*, 56 Ala. 357; *Gaunce v. Backhouse*, 37 Pa. St. 350; *McDonald v. Walker*, 95 Ala. 172; *Lee v. Wimberly*, 102 Ala. 539; *Goree v. Clements*, 94 Ala. 337; *Gilmer v. Wallace*, 75 Ala. 220.

Where several complainants seek to recover on the same right, all must be shown to be entitled to recover, or none can.—*Dunklin v. Wilson*, 64 Ala. 162; *Jones v. Reese*, 65 Ala. 134; *Taylor v. Robinson*, 69 Ala. 269; *Wilkins v. Judge*, 14 Ala. 135; *Schaffer v. Lavretta*, 57 Ala. 14; *James v. James*, 55 Ala. 525, 533; *Hutton v. Williams*, 60 Ala. 107; *Vaughn v. Lovejoy*, 34 Ala. 437; *Butler v. Gazzam*, 81 Ala. 491.

Several acts or transactions, in order to constitute a general assignment, must be parts of one whole, and it is clearly distinguishable from a fraudulent conveyance.—*Muscogee v. Pollak*, 108 Ala. 470; *Rochester v. Armour*, 92 Ala. 432; Acts, 1892-3, p. 1046; *Holt v. Bancroft*, 30 Ala. 193; 3 Am. & Eng. Encyc. Law, (2d ed.), 78-9; 1 Brick., 128, §§ 75, 76; 3 Brick., 49, § 9, *et seq.; Gay v. Strickland*, 112 Ala. 572; *Blakey's Appeal*, 7 Pa. St. 449.

A voluntary parting with all his property by the debtor is a necessary element of a statutory general assignment.—*B. & P. Supply Co. v. Lucas*, 119 Ala. 202; *B. & P. Supply Co. v. Bank*, 123 Ala. 203; 26 So. Rep. 314.

The burden of proving affirmative allegations is on complainants.—3 Brick., 433, §§ 388-9; *Tompkins v.*

*Nichols,* 53 Ala. 200; *A. G. S. v. Frazier,* 93 Ala. 45, 52; *Clements v. Moore,* 6 Wall. 315; 5 Am. & Eng. Encyc. Law, (2d ed.), 23, *et seq.*

The relations between parties is immaterial to a third person who attacks an attempted preference of a creditor by a debtor.—*Goetter v. Norman,* 107 Ala. 592.

Fraud is not presumed, but must be proved clearly. *Adams v. Thornton,* 78 Ala. 489; *Pollak v. Searcy,* 84 Ala. 262; *Goetter v. Norman,* 107 Ala. 594; *McDonald v. Pearson,* 114 Ala. 642; 3 Brick. Dig., 344, § 195.

A party by introducing a witness indorses his credibility.—*Warren v. Gabriel,* 51 Ala. 235; 3 Brick. Dig. 829, §§ 107, 109; 29 Amer. & Eng. Encyc. of Law, 811, 812, 817, 818.

Disputed questions of fact in chancery cases are reviewed on appeal without presumption in favor of lower court.—Code, § 3826.

J. M. Chilton, W. S. Thorington, W. J. Samford & Son and Lomax, Crum & Weil, *contra.*—The bill in the present case was not filed to set aside an attachment on the ground that the process was resorted to for the purpose of delaying, hindering or defrauding creditors, but is a proceeding to set aside a preference given by the Pollak Company to three named creditors, in violation of the statute which forbids preferences in general assignments. It is not because the attachments were fraudulently sued out when tested by the attachment law, but because they were sued out contemporaneously with and as part of the general scheme of the Pollak Company to effect a transfer of all its property and in so doing to create a preference in favor of these creditors. No matter how valid the grounds of attachment, if the assignor intending to assign, withheld the assignment for the purpose of enabling the creditors to attach, the preference so acquired should be set aside, whether *the attaching creditors* knew of the intention or not.—*Henderson v. J. B. Brown Co.,* 123 Ala. 623; *Rochester v. Armour,* 92 Ala. 432.

There is no place in attachment proceedings where the consent of the defendant may appear. This being

so, it must be proved *aliunde;* and when such consent is proved, we respectfully submit that it is wholly unimportant whether the creditor knows of the intention of the assignor or not.—*Rochester v. Armour,* 92 Ala. 432; *Preston v. Spaulding,* 120 Ill. 208; *Kellogg v. Richardson,* 19 Fed. 70; *Clapp v. Ditman,* 19 *Ib.* 15; *Perry v. Corby, Ib.* 737; *Clapp v. Nordmeyr,* 25 *Ib.* 71; *Wilks v. Walker,* 22 S. C. 108.

If the evidence shows that the Pollak Company withheld the assignment for the purpose of enabling these attaching creditors to secure a preference, the complainant is entitled to relief whether the creditors participate in such design or not, or whether they even knew it.

True, it is alleged that they did participate. But if it was unnecessary to have alleged this fact it was unnecessary to prove it.

Such allegation is not descriptive in its nature and if there is enough alleged and proved aside from it to make out a case the complainant is entitled to recover. *Henderson v. J. B. Brown Co.,* 123 Ala. 623; 1 Daniel Ch. Pr. p. 860, note 3; *Pope v. Allis,* 113 U. S. 363.

"When the bill justifies relief and the defendants have not been taken by surprise a decree will not be reversed or a new trial granted, because of a variance."—1 Daniel, *supra; Moore v. Crawford,* 130 U. S. 122; *Montgomery v. Givhan,* 24 Ala. 387; Gresley's Eq. Ev. p. 164; *Bryan v. Henrix,* 37 Ala. 337; *Gilch v. Gilmer,* 9 Ala. 963; *Day v. Prescott,* 40 Ala. 624; *Morrow v. Termley's Admr.* 35 Ala. 131; *David v. David,* 27 Ala. 322.

McCLELLAN, C. J.—On January 8th, 1894, the H. B. Claflin Co., Josiah Morris & Co., and Cane, McCaffrey & Co., creditors of the Pollak Co., a mercantile corporation, sued out an attachment against said Pollak Co., and the writs were severally levied on the stock in trade of said company. Immediately after these writs were levied, a resolution was adopted by the directors of the Pollak Co. directing Ignatius Pollak, its president, to execute a general assignment of all its property and assets to Pelzer and Roman for the benefit of its

creditors, subject expressly, however, to the liens of said attachments, and thereupon immediately a deed of assignment was accordingly executed and the trust thereby created was at once accepted by the assignees. The Muscogee Manufacturing Co., for itself and other creditors of the Pollak Co. who should come in and make themselves parties, etc., soon afterwards filed this bill against said company, the assignees in the deed of assignment, said attaching creditors, B. J. Baldwin as executor of Josiah Morris, deceased, and the sheriff, setting up that said attachments were collusive, fraudulent and void, that they and the deed to the assignees were parts of one and the same transaction together constituting a general assignment for creditors, etc., etc., and praying that said writs of attachment be "treated and declared as part of said general assignment and constituting therewith one conveyance of general assignment for the equal benefit of all the creditors of said Pollak & Co., and that the preferences thereby attempted to be created be declared null and void," and all the property of said Pollak Co., freed from said alleged attachment liens, be administered for the equal benefit of all its creditors, etc., etc. The averments of the bill as to the collusive character of the attachments, as to the writs being sued out and suffered or procured as part of the same transaction in which the general assignment was executed, etc., etc., are as follows: "Orator further avers on information and belief that at the time of making said general assignment, the said Pollak Company owed a large amount of debts to various creditors amounting in the aggregate to, to-wit, over two hundred thousand dollars, among which creditors were Josiah Morris & Co., in the sum of over fifty thousand dollars; the H. B. Claflin Co., in the sum of exceeding thirty thousand dollars; and Cane, McCaffrey & Co. in the sum of more than twenty-five hundred dollars. That while the execution of said deed of assignment was in contemplation by said Pollak Co., and so known to be by said Josiah Morris & Co., H. B. Claflin Co., and Cane, McCaffrey & Co., said creditors so named and said Pollak Co. en-

tered into an agreement and understanding that a priority or preference should be given by said Pollak Co. to said named creditors over the other creditors of said Pollak Co. by the terms of which the said deed of assignment, although prepared before said attachments were sued out, should be held back from delivery to the trustees and from record until after said attachments should be sued out and levied. And orator avers that pursuant to said agreement, understanding or arrangement the said attachments were sued out by said creditors respectively in the city court of Montgomery, shortly after 7 o'clock A. M. on January 8th, 1894, and were received by the sheriff and endorsed as received by him in the following words: Cane, McCaffrey & Co.'s attachment at 8:15 o'clock on said day. Josiah Morris & Co.'s attachment at 8:16 o'clock on said day, and H. B. Claflin Co.'s attachment at 8:17 o'clock on said day, and all being so received in the morning of said day. And orator further avers that said attachments were levied by the sheriff in the morning of said day on all the stock of goods, wares and merchandise in the storehouses of the said Pollak Co. in the city of Montgomery, Alabama, but at what precise hour they were so levied orator is unable to state. Orator further alleges on information and belief that said Pollak Co. knew before said attachments were sued out that the same were going to be sued out, and the said attaching creditors knew before said attachments were sued out that said assignment was going to be made, and by mutual agreement, understanding or arrangement between all of the parties, the said attachments were issued, received by the sheriff, and levied by him, and the said assignment executed in the order herein averred, and that said attachments were so sued out and levied and said assignment so executed thereafter with the intent on the part of all of said parties to have and make said attachments and assignment operate as a preferential transfer of said property so levied on in favor of said attaching creditors over other creditors of said Pollak Co., and to further effectuate said purpose it was provided in said deed of assignment that the same should

be subject to said writs of attachment; and orator on advice and belief avers that said attachments and deed of assignment together constitute one general assignment for the benefit of all the creditors of said Pollak Co. equally. Orator avers that in further aid of the preference sought to be given said attaching creditors, it is provided in said deed of assignment that said assignment is also subject to the landlord's lien for the rent of said storehouses, which rent, orator avers, amounts to about nineteen thousand dollars." The answers of the attaching creditors of Pollak Co., and the answer of that company, each and all directly and unequivocally deny any and all collusion, agreement, understanding and arrangement between said creditors and said Pollak Co. and between each and every of them and the Pollak Co.; and aver that their several claims upon which the attachments were issued were just debts against said company in the amounts for which the writs were severally sued out, and that the ground set up in the affidavits respectively for the issuance of the attachments in fact existed; and the bill in no way questions the existence or *bona fides* of said debts nor the existence of the ground upon which the attachments were sued out.

Upon the foregoing statement of the case as presented by the bill and answers, it is obvious that the main issue in the cause is collusion *vel non* between said creditors and the Pollak Co. in the suing out of said attachments. The chancellor found that issue in favor of the complainant as to Josiah Morris & Co. and the H. B. Claflin Co. and against the complainant as to Cane, McCaffrey & Co., and decreed relief accordingly.

In reviewing this finding no presumption in favor of its correctness can be indulged, the statute providing that "in deciding appeals from the chancery court no weight shall be given to the decision of the chancellor upon the facts, but the Supreme Court shall weigh the evidence and give judgment as they may deem best," (Code, § 3826); and as the evidence before the chancellor was the same and in the same form—depositions

[The H. B. Chaflin Co. *et al* v. Muscogee Manufacturing Co. *et al.*]

and writings—as that before us, there is no room for the application of the doctrine declared in *Woodrow v. Hawving,* 105 Ala. 240.

On the issue thus made and thus determined by the chancellor and now presented for our determination anew, the burden of proof throughout was upon the complainant. The rule that on a bill filed to set aside a conveyance of property made by an insolvent and failing debtor in payment of an alleged antecedent debt the onus is on the respondent grantee to specifically allege and satisfactorily prove an adequate, *bona. fide* consideration, and how, when and in what it was paid, etc., etc., has no application here. In the case stated the burden of alleging and proving the conveyance by such a debtor is always upon the complainant, and it is only when the fact of conveyance has been proved or admitted that the onus shifts to respondent to show the consideration, its payment, etc. If property of an insolvent debtor could be efficaciously transferred by him to a creditor in payment of an antecedent debt by means of a collusive attachment, and the fact of collusion in the issuance of such attachment were admitted in a given case, then and thereupon it would be for the attaching creditor to prove the *bona fides* and adequacy of his debt and its satisfaction through the attachment; but until the collusive and covinous character of the attachment should be proved or admitted the respondent would rest under no burden whatever. And if in such case it were admitted, as it is here, that the asserted debt was just and adequate, and that there were grounds for the issuance of the attachments, there would be no occasion, in any aspect possible of assumption by the case, for the creditor to offer any evidence: the whole case for the complainant would fall of its own weight to the ground. In the case supposed the collusiveness of the attachment would have to be proved before the respondent would be put to any showing whatever; as in the case of an alleged fraudulent conveyance, the fact of the conveyance by an insolvent debtor must be proved before the respondent is called upon to prove anything, before any burden is cast upon him.

As a transfer of property even in payment of a valid and adequate antecedent debt cannot be effected through the procurement of the collusive sufferance of an attachment by the debtor, when such an attachment is attacked by other creditors as constituting in part a general assignment and involving an unlawful preference of the attaching creditor over other creditors, the case for the complainant rests primarily upon the affirmative fact affirmatively alleged by him that the attachment was the result of collusion between the plaintiff in attachment and the debtor, and, of consequence, that the preference secured by the attachment proceeded from the debtor's own volition and was the giving of a preference by him. Of course, such collusion may be proved by evidence of the circumstances attending the transaction, but until it is proved in that or some other way by the complainant no case is made for relief; and when it is so proved there is an end of the case in complainant's favor. So that there can never be any shifting of the burden of proof to the respondent upon such a bill. If the complainant offers evidence tending to show collusion, the respondent may either submit the cause on the assumption by him that the tendency of complainant's evidence is not sufficiently strong to justify a finding of collusion, or he may offer evidence of his own in rebuttal of the tendency of the testimony on the other side; but in no posture which the case can assume is it possible to say that any burden of proof is on the respondent; and while, if circumstances are relied on by complainant to show collusion, and evidence of circumstances which tend to show collusion is adduced, the respondent may by way of reducing the supposed probative force of such circumstances, or of denuding them of all probative force, bring forward evidence to rebut their tendencies, he cannot be said to rest under any burden of proof in such connection, and it is entirely inapt and inaccurate to say that he is called upon or that the onus is on him to explain or rebut inconclusive indications of collusion that arise from the surroundings of the main transaction. The charge of collusion is affirmatively made by the com-

[The H. B. Chaflin Co. *et al* v. Muscogee Manufacturing Co. *et al.*]

plainant. It is a charge of fraud. His whole case rests upon its truth. And from the beginning to the end of the trial the burden of its establishment is upon him. The respondent is not called upon to disprove the charge, nor to explain or rebut circumstances which tend to an unsatisfactory degree to prove it.—*Moog v. Farley*, 79 Ala. 246; *First National Bank, etc., v. Kennedy*, 91 Ala. 470; *A. G. S. R. R. Co. v. Frazier*, 93 Ala. 45, 51-2; *Tompkins et al. v. Nichols et al.*, 53 Ala. 197.

A careful examination and consideration of the evidence in this case fails to reasonably satisfy us that the attachments were sued out and levied under any agreement, understanding or arrangement between the attaching creditors and the Pollak Co., or that there was collusion in any form between them, or even that the Pollak Co. knew said creditors were about to sue out the attachments and delayed the execution of the assignment in order that they might secure a preference by the levy of the attachments, or that said creditors knew that the Pollak Co. was contemplating making an assignment. Upon the direct inquiry of collusion *vel non* the complainant itself examined Billing of the firm and the manager of the business of Josiah Morris & Co., and the sole representative of that firm having any connection with this transaction, and Knowles, the secretary and treasurer of the Pollak Co. These witnesses testified roundly and particularly and circumstantially, so to speak, to the effect that there was no agreement, no understanding, no arrangement, no collusion between the attaching creditors and the Pollak Co. in respect to the attachments, that the creditors never communicated their purpose to attach to said company, that it knew of no such purpose, and that the creditors knew nothing of the contemplation of the company to make a general assignment in the event attachment should be levied. There is no suggestion nor room for suggestion in the case that the witnesses Billing and Knowles thus introduced and examined by the complainant testified otherwise than complainant expected they would. Complainant was of course at liberty to show that the facts were other than as de-

posed by them; but their introduction by the complain-
ant involved some assurance that they were not un-
worthy of belief, and estopped complainant to impeach
them.—1 Green Ev. § 422. Billing and the representa-
tives of Cane, McCaffrey & Co. and the H. B. Claflin
Co. acted together in and about suing out the attach-
ments from the time those representatives arrived in
Montgomery till the writs were levied, and he was thus
in a position to testify as to the purposes, knowledge,
etc. common to them all. The only other witnesses ex-
amined who were connected with the suing out and
levy of the attachments were Cane, of the firm of Cane,
McCaffrey & Co. and their sole representative in this
matter, and Frank, who was the sole representative of
The H. B. Claflin Co. They were introduced by the
respondents, and each of them testified fully and un-
equivocally to the entire absence of all agreement,
understanding and arrangement; and to facts wholly
negativing any collusion, between the attaching credit-
ors and the Pollak Co. in respect of the suing out and
levy of the attachments. They had no knowledge of
the intention of the Pollak Co. to make a general as-
signment, nor did they communicate the purpose of
these creditors to sue out attachments to the Pollak Co.
directly or indirectly. These witnesses and Billing, of
course, knew whether there was any agreement, under-
standing or arrangement between their principals and
the Pollak Co. They, of course, were able to say posi-
tively that they did not know that the Pollak Co. con-
templated making a general assignment and hence could
not have sued out the attachments with reference to
such intention. They, of course, knew whether the
Pollak Co. had received any intimation from these
creditors that they were going to attach. Unless, there-
fore, we convict them of willful false swearing—and
this though the complainant itself vouches for the
credibility of one of them who deposes substantially
to the same facts as the other two—we must hold that
these attachments were sued out on a sufficient ground
solely for the collection of just and honest debts with
no ulterior purpose and without any shadow of collu-

sion with the Pollak Co.   Yet we are asked to hold to
the contrary and the chancellor did hold to the con-
trary, the holding involving incidentally, as we have
suggested, the conviction of these witnesses of false
swearing, upon certain circumstances—in connection
with the gratuitous assumption that these creditors
were called upon to explain them—which are either
satisfactorily explained, or which, so far as they remain
unexplained, would not justify the conclusion to which
it is sought to bring us even in the absence of the tes-
timony of these witnesses.   Unexplained the most po-
tent circumstances relied upon are those immediately
connected with the preparation and execution of the
deed of assignment.   The Pollak Co. was insolvent and
in a failing condition.   It contemplated making a gen-
eral assignment in a certain contingency.   The deed of
assignment was executed, as we have said within one-
half an hour after these attachments were levied.   In
it the fact and date of the levies is recited and the con-
veyance is made subject to the lien of the levies.   The
instrument was prepared or partially prepared by the
company's attorney and by him delivered to Knowles,
the company's secretary and treasurer, on Saturday
night before the attachments were levied about 8:20
o'clock on Monday morning.   As soon as the attach-
ments were levied a meeting of the company's board of
directors was called and assembled, the directors being
employes in the company's business and in the house
at the time, and passed a resolution authorizing and
directing the execution of the deed of assignment, and
it was thereupon executed by the president of the com-
pany.   But Knowles, the secretary and treasurer of the
company, was introduced as a witness by the complain-
ant itself, and he explains the facts to which we have
just adverted.   He says the company was being severely
pressed by its creditors, that it apprehended attach-
ments, that it had concluded to make a general assign-
ment in the event any of its creditors did attach, and
to this end its attorney had been instructed to draw up
a deed of general assignment to be executed in the event
attachments were sued out, that in pursuance of these

[The H. B. Chaflin Co. *et al* v. Muscogee Manufacturing Co. *et al.*]

instructions the attorney drew up the deed and delivered it to him, Knowles, on Saturday night before the attachment, that the instrument was typewritten, that it contained the reference to attaching creditors when it was so delivered to him, but not their names or the date of levy, but that blanks were left for the insertion of this date and the names of any creditors who should attach, that the president of the company had gone home for the night when this paper was handed to him, that the attorney told him the instrument was to be executed only in the event attachments were levied, and that if attachments were levied he should thereupon have the board to direct the execution of the deed, that the blanks referred to should then be filled in and the deed executed, that in consonance with these directions he assembled the board of directors immediately upon the levy of these attachments, that the resolution to execute the deed was then passed, that the president of the company thereupon filled in said blank with the names of these attaching creditors and the date of the levies, and executed the deed of assignment in accordance with the said resolution. Thus explained these facts, as to the time of the preparation of the deed and as to the insertion therein of the names of these attaching creditors, etc., etc., do not show that the Pollak Co. knew before these attachments were sued out and levied that they were going to be sued out and levied, and delayed the execution of the deed in order to give these creditors a priority over others. And even any tendency they might otherwise have had to show such knowledge on the part of the Pollak Co. is rebutted by the testimony of Knowles to the effect that it had no such knowledge and by that of Billings, Cane and Frank that no intimation of the purpose to attach was ever conveyed by these creditors to that company or to anybody else.

But even if the Pollak Co. had reason to believe that these creditors were going to attach, or even knew it, and delayed the execution of the deed until they had attached, and thereby acquired a priority, the rights

[The H. B. Chaflin Co. *et al* v. Muscogee Manufacturing Co. *et al.*]

of the creditors under their attachments would not be affected unless they colluded with the company to that end—had some agreement, understanding or arrangement with the company to that effect. This is true in this case because the bill alleges such agreement, understanding or arrangement, and upon the case so alleged complainant must recover if at all; and it is true as a general proposition of law because these creditors, having just debts against the Pollak Co. and a ground upon which to resort to attachment for their collection, had such unqualified right to invoke that remedy and acquire thereby a prior and preferential lien as that no act or intent on the part of the company in which they did not participate could destroy their lien or convert it into a transfer for the equal benefit of all creditors. In such case the lien does not proceed from the volition of the Pollak Co., but from the lawful and adversary act of the attaching creditors; and such act cannot be emasculated of its lawful and adversary character by the mere fact that the company refrained from taking steps it might have taken to prevent the lien attaching even with the intent to have the lien attached, when the attaching creditors had no part or concern in the act or intent of the company.

The fact that respondents failed to examine Pollak, the president of the company defendant in attachment, and White, its attorney, is not proper matter for consideration against them. To make it pertinent the theory would be, of course, that Pollak and White knew the facts as to collusion *vel non*, and that they must have known there was collusion, else respondents would have examined them. These witnesses were equally accessible to the complainant, and it would seem more pertinent to say, since the burden to prove collusion was on the complainant, that the latter knew they would testify there was no collusion else *it* would have examined them. But no legitimate deduction can be drawn from such failure to examine witnesses accessible to both sides, as has been expressly decided by this court in *Brock v. State*, 123 Ala. 24, and in *Coppin v. State*, 123 Ala. 58.

[The H. B. Chaflin Co. *et al* v. Muscogee Manufacturing Co. *c. al.*]

We do not find that the attaching creditors participated in any scheme evolved subsequent to the attachment to rehabilitate Pollak and set him up in business again; but if the evidence showed to the contrary—that they did aid Altmeyer, or even Pollak as an individual, to purchase the attached property with a view to Pollak's going into trade with it—this would not invalidate their attachments, and it would not afford a sufficient basis for an inference of collusion in suing out the attachments—certainly not one of sufficient strength to prevail against the direct testimony of all the witnesses examined both by complainant and respondent in this connection to the contrary. It does not appear that any of the attaching creditors had any interest in Pollak's acquiring the attached property and going into business with it, except Morris & Co. Pollak individually owed them a considerable debt. He was doubtless insolvent, and their only hope of collection lay in opportunity being afforded him to get again into a business out of the profits of which he could pay this debt. It was, therefore, but natural that Morris & Co. should have desired that he should acquire this stock of goods. That they took any steps to that end there is no positive evidence, and the circumstances relied on to so prove cannot be said to do so satisfactorily. But conceding they did, there is no evidence that the other plaintiffs in attachment participated therein: They certainly had no interest to subserve by such a course. And as to Morris & Co. themselves, the concession involves little if any tendency to show the collusiveness of their attachment since the fact is consistent with good faith in suing out the process. They had the same interest to subserve in this connection whether the suits were commenced in good faith or collusively. Whatever action they took in respect of the sale toward giving Pollak the control of the property may well have been actuated by considerations existing after the attachments were sued out and having no relation to the inception of the proceedings. And to impute to them collusion in instituting the proceedings upon circumstances subsequently transpiring and in themselves

consistent with good faith, would be to strain for and force a conclusion of fraud.

Numerous and various other circumstances are supposed by counsel for appellee to have a tendency to prove the averments of the bill as to collusion, etc. between the attaching creditors and the Pollak Co., and whatever weight these are set forth as having inherently is supposed to be greatly augmented by the alleged failure of the creditors to explain them. We shall not enter upon a discussion of these supposed circumstances. They have each been considered by the court, or, to speak more accurately, the court has considered the argument of counsel as to each of them in connection with the evidence; and we find that conceding that each of them has some support in the evidence and allowing for every legitimate inference in support of the bill which may be drawn from them they do not prove the collusion alleged in the bill, and very clearly they utterly fail in that behalf when considered in connection with the positive testimony of witnesses to which we have adverted going directly to show that the respondent creditors acted well within their absolute rights, in good faith and without collusion with the Pollak Co. in suing out their attachments. So far as the argument of counsel proceeds on the theory that these respondents were under the burden of explaining anything that occurred—and it does proceed on that theory to a great extent—it is untenable. There was no such burden on them, but they had a right to sit still and say nothing until the complainant proved its bill.

The foregoing discussion will serve to indicate the considerations upon which we reach the conclusion that the complainant has not proved the case made by its bill. The decree entered below must, therefore, be reversed, and a decree will be here entered, denying relief and dismissing the bill.

Reversed and rendered.